ROCK ISLAND MOTOR TRANSIT COMPANY v. MURPHY
MOTOR FREIGHT LINES, INC.
REGULATED MOTOR TRANSPORTATION ASSOCIA-
TION, INC., INTERVENER.[1]

August 5, 1949.

No. 34,748.

_____
[1]Reported in 40 N. W. (2d) 896.

Perry R. Moore and Stinchfield, Mackall, Crounse & Moore, for appellant Murphy Motor Freight Lines, Inc.

Hoyt Crooks, for appellant intervener.

Philip Stringer and Martin L. Cassell, Jr., for respondent.

R. W. Cronon, A. C. Erdall, Richard Musenbrock, C. O. Newcomb, S. W. Rider, Jr., T. J. Slattery, L. E. Torinus, Jr., and C. W. Wright filed a brief as amici curiae in support of respondent's petition for rehearing.

THOMAS GALLAGHER, JUSTICE.

Appeal from a district court judgment affirming an order of the railroad and warehouse commission granting plaintiff a *certificate of public convenience and necessity* to transport merchandise over a certain intrastate route between the Twin Cities and the Iowa border, parallel to the route of the Chicago, Rock Island & Pacific Railway Company, hereinafter called the "railroad."

Plaintiff is a wholly owned subsidiary of the railroad. Its application for a *certificate of public convenience and necessity* was made under L. 1925, c. 185 (M. S. A. 221.01 to 221.17). Thereunder, it proposes to engage in intrastate motor truck transportation in hauling less-than-carload lots from station to station along the route described, pursuant to an agreement with the railroad. Such shipments are to be on the latter's bills of lading. No pickups or deliveries are to be made by plaintiff. The public is to deal directly with the railroad and pay rail rates to the latter for truck transportation performed by plaintiff.

Merchandise to be transported thereunder is to be from that originally delivered to the railroad at its regular freight stations for shipment by rail, where it is to be picked up by plaintiff. Plaintiff is to be compensated directly by the railroad at such rates as may be agreed upon between them. The rates now paid plaintiff by the railroad for such service are substantially less than those charged by competitive motor vehicle carriers for like service furnished the public.

Prior to the filing of its application and since 1944, plaintiff had been performing the services covered thereby under and pursuant to a temporary certificate as a wartime emergency carrier under L. 1943, c. 210, § 1 (§ 221.175).

Appellant Murphy Motor Freight Lines, Inc., hereinafter referred to as Murphy, is a common carrier by motor vehicle and holds a *certificate of public convenience and necessity* to operate over various routes within the state, including the route to be covered by plaintiff's challenged certificate.

On appeal, Murphy asserts that the commission erred in issuing the certificate on the grounds that (1) plaintiff, not being an auto transportation company as defined and contemplated by L. 1925, c. 185, is ineligible for such certificate; (2) there being no finding that Murphy's service over the proposed route was inadequate, the commission was without power to issue the described certificate; and (3) the issuance of the certificate exceeded the jurisdiction of the commission, in that the proposed service was not in conformity with the regulatory provisions of the applicable statutes.

The commission's order, subsequently affirmed by the district court, provided:

"That upon full compliance by the Rock Island Motor Transit Company, a corporation, with the laws, and the rules and regulations of the Commission governing the operations of an auto transportation company, it be granted a certificate of public convenience and necessity to operate as such, subject to the restrictions hereinafter set forth, * * *;

\* \* \* \* \*

"Restrictions: That the applicant is restricted to the transportation for the Chicago, Rock Island and Pacific Railroad Company of property received by said Railroad Company for transportation over its railroad * * *:

\* \* \* \* \*

"Transportation by the applicant will be limited to the carrying of such property between depots or stations of the Railroad Company located at said points, which property is moving under contracts between the shippers and the Railroad Company and under railroad tariffs of rates, fares or charges."

■ L. 1925, c. 185 (§§ 221.01 to 221.17), was enacted for the purpose of regulating certain common carriers by motor vehicle between fixed termini or over regular routes and subjecting them to the jurisdiction of the railroad and warehouse commission. L. 1933, c. 170, was enacted subsequently to cover contract carriers and common carriers by motor vehicle not operating between fixed

termini or over regular routes, and to subject them to the regulatory power of the commission. See, North Shore F. & F. Co. v. North Shore B. M. T. Assn. 195 Minn. 336, 263 N. W. 98.

■ In State and R. R. & W. H. Comm. v. R. I. M. T. Co. 209 Minn. 105, 295 N. W. 519, it was urged by counsel for appellants, including Murphy here, who appeared therein, that the services furnished by plaintiff, as above described, made plaintiff a common carrier of property between fixed termini or over a regular route, and placed it under the regulations provided for in L. 1925, c. 185, so that before it could furnish the described service it must first obtain a *certificate of public convenience and necessity* thereunder. This court upheld the viewpoint that plaintiff, by virtue of its participation in the railroad's common carriage in performing the transportation described, was a common carrier of property between fixed termini or over a regular route, and that before it could engage in such service it must first obtain a *certificate of public convenience and necessity* under c. 185.

■ Murphy, while now conceding that plaintiff is engaged in common carriage, asserts that it is not an auto transportation company as defined in § 221.02, subd. 8, which provides:

"The term 'auto transportation company,' * * * means every corporation or person owning, controlling, operating, or managing any motor-propelled vehicles, not usually operated on or over rails, *used in the business of transporting persons or property for compensation as common carriers over any public highway in this state* between fixed termini or over a regular route; * * *." (Italics supplied.)

The language of this statute is not ambiguous. It is undisputed that plaintiff owns, controls, operates, and manages the motor vehicles involved; that they are not operated on or over rails; and that they are used, or to be used, in the business of transporting persons or property for compensation. As indicated above, we have previously held that such transportation is as a common carrier over public highways of this state between fixed termini or over a regular route.

State and R. R. & W. H. Comm. v. R. I. M. T. Co. *supra.* Giving effect to the plain language of the statute, the conclusion cannot be escaped that plaintiff falls within the classification of an "auto transportation company" as defined therein.

■ It is true that plaintiff's stock is wholly owned and controlled by the railroad. L. 1933, c. 170, forbids the issuance of a permit thereunder to railroads or to wholly owned subsidiaries thereof. In our previous decisions, we have held that c. 170 is separate from and independent of the regulations set forth in L. 1925, c. 185; that the restrictions in c. 170 relate to contract carriers or carriers not operating between fixed termini or over regular routes; and that a railroad, if it otherwise qualifies as an auto transportation company, may apply for a certificate under c. 185. See, State and R. R. & W. H. Comm. v. R. I. M. T. Co. 209 Minn. 105, 295 N. W. 519; State and R. R. & W. H. Comm. v. M. & St. L. R. Co. 209 Minn. 564, 297 N. W. 189. It follows from the foregoing that the commission had jurisdiction to hear plaintiff's application and to make its determination in connection therewith, provided the order made did not exceed its prescribed powers.

■ Murphy asserts that the evidence is insufficient to sustain the commission's finding of convenience and necessity. At the hearing before the commission, some 33 commercial and traffic witnesses submitted their testimony. Such witnesses, for the most part, were shippers along the route who patronized both the coördinated truck-rail services here proposed and the truck services furnished by Murphy. Most of such witnesses preferred the former. The reasons given were that it was speedier and that it gave them the benefits of terminal and station facilities and of telephone and telegraph services, which Murphy could not duplicate. Their testimony indicated a substantial saving in time in the former service and that it was more dependable. The evidence submitted was amply sufficient to sustain the commission's findings on this issue.

It is true that the commission did not find that the existing service of Murphy was inadequate. This, however, is unnecessary. A finding of public convenience and necessity is all that the law requires.

See, C. & N. W. Ry. Co. v. Verschingel, 197 Minn. 580, 268 N. W. 2, 709; United States v. Detroit & Cleveland Nav. Co. 326 U. S. 236, 66 S. Ct. 75, 90 L. ed. 38; United States v. Pierce Auto Freight Lines, Inc. 327 U. S. 515, 66 S. Ct. 687, 90 L. ed. 821.

■ Section 221.08 prescribes the factors which the commission must consider in determining whether a *certificate of public convenience and necessity* should be issued. Thereunder, it is required to consider the interests of the public rather than those of either party; whether present transportation service is adequate; whether the proposed service is likely to be permanent; and the effect of such service upon present service, existing travel conditions, and the cost of highway maintenance.

The record clearly establishes that all such factors were taken into consideration by the commission. It follows, therefore, that the commission's finding on the issue of public convenience and necessity is amply supported by the evidence and cannot be disturbed here. See, C. & N. W. Ry. Co. v. Verschingel, 197 Minn. 580, 268 N. W. 2, 709; State and R. R. & W. H. Comm. v. M. & St. L. R. Co. 209 Minn. 564, 297 N. W. 189; Twin City Motor Bus Co. v. Rechtzigel, 229 Minn. 196, 38 N. W. (2d) 825.

■ The purpose of L. 1925, c. 185, is expressed in § 4 thereof (§ 221.04). Thereunder, the railroad and warehouse commission is directed to *regulate* every *auto transportation company* engaged in the transportation of persons or property within the state as a common carrier between fixed termini or over a regular route. Thereunder, it is the duty of the commission to—

"fix just, reasonable and nondiscriminatory rates, fares, charges, and classifications; to regulate the facilities, accounts, service, and safety of operations of each such auto transportation company, * * *; to require the filing of annual and other reports, tariffs, schedules or other data * * *; to supervise and regulate auto transportation companies in all matters affecting the relationship between such auto transportation companies and the traveling and shipping public, * * *."

The order here in question permits plaintiff to operate at rail rates fixed by the railroad. As stated in plaintiff's brief:

"* * * The proposal here is the plan of coordinated rail-truck service * * *."

It is undisputed that under the contemplated plan the railroad, and not plaintiff, deals with the public, although it is plaintiff which actually transports the public goods. Plaintiff has no fixed tariffs, schedules, or other data which the commission may and is required to regulate and supervise in the public interests by virtue of obligations imposed upon it by the legislature.

It must be remembered that it is plaintiff, and not the railroad, which must be regulated by the commission under L. 1925, c. 185. It is plaintiff, and not the railroad, which must file tariffs, schedules, and like data. It is plaintiff, and not the railroad, which must be regulated in all matters affecting its relationship with the shipping public. It is plaintiff, and not the railroad, whose facilities, accounts, service, and operations must be subject to regulation by the commission.

The commission's supervisory power with respect to common carriers by motor vehicle is prescribed by L. 1925, c. 185. This chapter is specifically limited to auto transportation companies. Under separate laws enacted at entirely different times, the legislature has prescribed the commission's duties and powers with reference to the regulation of railroads. See M. S. A. cc. 216 to 219, inclusive. In none of these statutes is there authorization for the regulation of combined rail-truck service as proposed here.

The challenged certificate would seem to be contrary to the entire object and purpose of c. 185, whereunder the legislature intended to subject certain auto transportation companies engaged in the business of transportation by motor vehicle and using the state highways as a part of their plan to specific regulations by the commission for the public protection. The commission was given power to control and regulate such companies separate and distinct from its power to regulate and control railroads.

By virtue of the certificate issued here, it is obvious that the commission cannot properly supervise and regulate plaintiff under c. 185, and that if it attempts to regulate the railroad under other authority it must do so separate and apart from the certificate which it has issued and under distinct statutory provisions.

We are of the opinion that the commission's action here is in conflict not only with the legislative intent, but with the express obligations imposed upon it by c. 185. Had the legislature intended a grant of power sufficiently broad to permit authorization of combined rail and truck service, an express statutory provision to such effect would have been enacted. The legislative plan and intent as gathered from the statutes referred to would seem to be for the separation of rail and motor transportation companies, under separate and distinct regulatory provisions. The certificate here which combines rail and truck services in effect places plaintiff beyond the restrictive provisions of c. 185 and permits it, as an auto transportation company, to operate over the proposed route under rail rates and rail regulations.

For the reasons expressed, we hold that the *certificate of convenience and necessity* here challenged was in excess of the commission's power and in direct conflict with the statutory provisions governing the regulation of auto transportation companies.

Reversed.

ON PETITION FOR REHEARING.

On December 23, 1949, the following opinion was filed:

THOMAS GALLAGHER, JUSTICE.

In its application for rehearing, plaintiff requests clarification of our previous decision. Therein we held that the certificate issued by the commission, which authorized plaintiff to transport its rail freight at rail rates by motor vehicle over the state highways, was invalid as in excess of the power granted the commission by legislative enactment. This we adhere to.

As stated in our opinion, the statutes authorizing the issuance of certificates by the commission for transportation by motor ve-

hicle over the state highways and the regulation thereof by the commission are separate and distinct from those relating to the commission's authority with respect to transportation by rail. The certificate here determined invalid, authorized combined rail-truck service by an auto transportation company intended to be regulated under c. 185, but under conditions, methods, tariffs, and rates requiring regulation under statutes governing rail transportation. The granting of such a certificate, we feel, was in excess of the commission's authority.

The petition for rehearing is denied.