STATE EX REL. RAYMOND BROS. MOTOR TRANSPORTATION COMPANY AND OTHERS v. RAILROAD AND WAREHOUSE COMMISSION OF MINNESOTA, IBAR M. SPELLACY, *d.b.a.* SPELLACY MOTOR CARGO, AND GREAT NORTHERN RAILWAY COMPANY.[1]

April 10, 1952.

No. 35,771.

[1]Reported in 52 N. W. (2d) 769.

340

*Perry R. Moore* and *Stinchfield, Mackall, Crounse & Moore,* for relators Raymond Bros. Motor Transportion Company, Murphy Motor Freight Lines, Inc., Ward Transfer, Leger Truck Line, Gerdin Transfer, Inc., O. & W. Express Company, and Glendenning Motorways, Inc.

*Gordon Rosenmeier,* for relator Minnesota Motor Transport Association.

*Thomas W. Walsh,* for relator Hess Motor Express, Inc.

*Franklin J. Van Osdel,* for relator Dakota Transfer & Storage Company.

*Percy M. Meehl,* for relator Speedway Transit, Inc.

*J. A. A. Burnquist,* Attorney General, and *George B. Sjoselius,* Deputy Attorney General, for respondent Railroad and Warehouse Commission.

*Bowen & Bowen,* for respondent Ibar M. Spellacy, *d. b. a.* Spellacy Motor Cargo.

*Edwin C. Matthias, Anthony Kane,* and *R. W. Cronon,* for respondent Great Northern Railway Company.

*Gerald T. Mullin* filed a brief as *amicus curiae* on behalf of the Legislative Committee of the Railroad Brotherhoods of Minnesota.

MAGNEY, JUSTICE.

Petition by relators for a writ of prohibition to restrain the state railroad and warehouse commission from taking any further proceedings on the application of one Ibar M. Spellacy for a certificate of public convenience and necessity authorizing him to transport certain freight, and to restrain the commission from conducting hearings thereon at the times and places set by the commission.

On December 20, 1951, Ibar M. Spellacy, an individual, *d. b. a.* Spellacy Motor Cargo, filed with the railroad and warehouse commission his application praying that the commission, pursuant to L. 1925, c. 185 (M. S. A. 221.01 to 221.17), as amended, issue to him a certificate of public convenience and necessity authorizing him to transport L. C. L. (less-than-carload lots) freight of the Great Northern Railway Company between stations of that company. His application sets out that if he is granted the requested certificate it is his intention to operate as an auto transportation company over certain described routes coinciding with routes of the Great Northern Railway Company; that he proposes to furnish service to and from all points on the proposed routes in the transportation of L. C. L. freight and express of the Great Northern Railway Company between depots of the railway company located at those points; and that the garages, depots, warehouses, buildings, and other property to be devoted to the public service by applicant in the proposed operation will be the listed depots of the railway

company; also that the service will be daily but nonscheduled. The application further sets out:

"That the schedule of rates, fares and charges to be collected for the transportation service are the tariff of rates, fares and charges filed and published by applicant, and in accordance with the law and the rules and regulations of the Commission pertaining to an auto transportation company."

The commission set the hearing on the application for temporary authority for January 7, 1952. No hearing was held on that day. A continued hearing on the application for temporary authority and permanent certificate was set for February 4, 5, and 6 at Willmar, and for February 7 at Fergus Falls. On January 23, 1952, an objection to jurisdiction and a motion to dismiss was filed by relators herein. On January 29, 1952, the commission denied the motion for dismissal.

On January 31, 1952, this court, on the petition of relators herein, ordered the issuance of an alternative writ of prohibition directed to the railroad and warehouse commission, Ibar M. Spellacy, and the Great Northern Railway Company, commanding said commission, Spellacy, and the railway company to desist and refrain from any further proceedings, temporary or otherwise, on Spellacy's application, and to desist and refrain from conducting hearings thereon at the times and places set by the commission, all until the further order of the court, and to show cause by return to said writ why they should not be absolutely restrained in the respects mentioned, other than the dismissal of Spellacy's application. In its return to the alternative writ, dated February 14, 1952, the commission and each of the three individual members thereof stated that they propose to perform the statutory duties required of them under the provisions of M. S. A. c. 221, and as a duty thereunder to proceed and hear and determine all matters relating to the application of Spellacy for a temporary and permanent certificate of public convenience and necessity and any motion of the petitioners in said proceeding to dismiss the temporary application or the permanent

application, at the time and place of the formal hearing on said application, as provided by law, unless prohibited from so doing by this court.

Relators are auto transportation companies holding certificates pursuant to L. 1925, c. 185 (M. S. A. 221.01 to 221.17), as amended. They perform services to, from, and between substantially all of the points and over substantially all of the routes applied for by Spellacy.

On February 6, 1952, and prior to the filing of its return by the commission, Spellacy made a motion to discharge the alternative writ of prohibition and to dismiss the proceedings. It was denied, with permission to renew the same at the time of the argument on the writ of prohibition.

We are not determining whether a writ of prohibition is a proper remedy under the facts submitted to us. The respondent commission and its members in their return do not question the propriety of it, and the result reached makes a determination immaterial in this case.

Relators contend that the commission is wholly without jurisdiction to hear, determine, or grant either the temporary or permanent certificate of public convenience and necessity as prayed for by Spellacy. As to his application for a permanent certificate, relators say that the commission is wholly without jurisdiction, because (a) it appears on the face of the petition that Spellacy proposes to operate a combined rail-truck service; that the granting of such certificate would be in excess of the power granted the commission and in direct conflict with statutory provisions governing the regulation of auto transportation companies; and that this court so held in the so-called second Rock Island case, namely, Rock Island Motor Transit Co. v. Murphy Motor Freight Lines, Inc. 229 Minn. 291, 40 N. W. (2d) 896, and again in State ex rel. Murphy Motor Freight Lines, Inc. v. District Court, 230 Minn. 560, 42 N. W. (2d) 426; and (b) as appears from the face of the petition, that Spellacy is not the real party in interest. As to Spellacy's application for a temporary certificate, relators claim

that the commission is without jurisdiction. They reiterate the reasons given relative to the permanent certificate and in addition thereto cite § 221.05 as prohibiting it.

Section 221.05, subds. 1 and 2, provides in part:

"No auto transportation company shall hereafter operate for the transportation of persons or property for hire as a common carrier on any public highway without first having obtained from the commission under the provisions of sections 221.01 to 221.16 a certificate declaring that public convenience and necessity require such operation. * * *

"The auto transportation company making application for such certificate, shall do so in writing, which petition shall be verified by the applicant and shall specify the following matters:

\* \* \* \* \*

"(2) The public highway or highways over which, and the fixed termini between which, or the route or routes over which it intends to operate;

\* \* \* \* \*

"(5) A schedule of the tariff or rates desired to be charged for the transportation of freight or passengers;"

The application of Spellacy contains all the matters which the statute makes requisite for a proper petition. As to matters required to be set out under paragraph (5) of the statute, the application states:

"That the schedule of rates, fares and charges to be collected for the transportation service are the tariff of rates, fares and charges filed and published by applicant, and in accordance with the law and the rules and regulations of the Commission pertaining to an auto transportation company."

Section 221.04 vests the commission with power and authority to supervise and regulate auto transportation companies and to require the filing of annual and other reports, tariffs, schedules, or other data. Subd. 1 of the section provides:

"* * * The commission shall have power and authority, by general order or otherwise, to prescribe rules and regulations in conformity with sections 221.01 to 221.17, applicable to any and all auto transportation companies."

Subd. 3 provides:

"No time schedule, tariff or rates shall be put into effect or be changed or altered except upon hearing duly had and an order therefor by the commission."

Both relators and respondents Spellacy and Great Northern Railway Company base their contentions on the so-called second Rock Island case, 229 Minn. 291, 40 N. W. (2d) 896. Relators also rely on State ex rel. Murphy Motor Freight Lines, Inc. v. District Court, 230 Minn. 560, 42 N. W. (2d) 426. In the second Rock Island case, the applicant for a certificate of public convenience and necessity under L. 1925, c. 185, was a wholly owned subsidiary of the Chicago, Rock Island & Pacific Railway Company. It proposed to engage in intrastate motor-truck transportation in hauling L. C. L. freight from station to station along the route of the railroad pursuant to an agreement with the railroad. Such shipments were to be made under the latter's bills of lading, and the public was to deal directly with the railroad and pay rail rates to it for the truck transportation performed by the trucker. No pickups or deliveries were to be made by the truckers. The freight to be transported was that originally delivered to the railroad at its regular freight stations for shipment by rail, and the trucker was to pick up the freight at such stations. The trucker was to be compensated by the railroad at such rates as they might agree upon. The railroad and warehouse commission granted the trucker a certificate of public convenience and necessity under L. 1925, c. 185 (§§ 221.01 to 221.17). Another trucking concern holding a similar certificate to operate over the route to be covered by the newly issued certificate appealed from the order of the commission. The district court affirmed the commission.

Section 221.02, subd. 8, provides:

"The term 'auto transportation company,' * * * means every corporation or person owning, controlling, operating, or managing any motor-propelled vehicle, not usually operated on or over rails, *used in the business of transporting persons or property for compensation as common carriers over any public highway in this state between fixed termini or over a regular route; * * *."* (Italics supplied.)

We held in the second Rock Island case that the trucker there involved, the Rock Island Motor Transit Company, was an "auto transportation company" under the definition of the above-quoted statute, since it owns and operates motor vehicles engaged in the business of transporting property for compensation between fixed termini or over a regular route, and that *the commission had jurisdiction to hear the trucker's application and to make its determination in connection therewith, provided the order made did not exceed its prescribed powers.* We also said that the commission's finding on the issue of public convenience and necessity was amply supported by the evidence and could not be disturbed.

Under § 221.04, subd. 1, the railroad and warehouse commission is directed to regulate every auto transportation company in this state; "to fix just, reasonable and nondiscriminatory rates, * * * and classifications; to regulate the facilities, accounts, service, and safety of operations of each such auto transportation company, * * * to require the filing of annual and other reports, tariffs, schedules or other data * * *; to supervise and regulate auto transportation companies in all matters affecting the relationship between such auto transportation companies and the traveling and shipping public, * * *." The order issued in the second Rock Island case permitted plaintiff to operate at rail rates fixed by the railroad. Under the contemplated plan, the railroad and not the transportation company dealt with the public, although the transportation company actually transported the goods of the public. The transportation company had no fixed tariffs or schedules such as the commission is required to regulate and supervise under § 221.04 in connection with the operation of auto transportation

companies. The proposed plan was coördinated rail-truck service.

Under §§ 221.01 to 221.17, it is the auto transportation company which the commission must regulate. The chapter is specifically limited to such companies. As we said in the second Rock Island case (229 Minn. 298, 40 N. W. [2d] 901):

"* * * It is plaintiff, and not the railroad, which must be regulated in all matters affecting its relationship with the shipping public. It is plaintiff, and not the railroad, whose facilities, accounts, service, and operations must be subject to regulation by the commission."

Other laws prescribe the commission's duties and powers with reference to the regulation of railroads. We stated that the challenged certificate was contrary to the entire object and purpose of c. 185, since by virtue of the certificate it is obvious that the commission cannot properly supervise and regulate the auto transportation company; and if it attempts to regulate the railroad under other authority it must do so separate and apart from the certificate it has issued and under distinct statutory provisions. The challenged certificate permitted an auto transportation company to operate over the proposed route at rail rates under bills of lading and rail regulations. We held that the certificate which the commission issued was in excess of its power and in direct conflict with the statutory provisions governing the regulation of auto transportation companies.

The Spellacy application differs materially from the application which was acted upon and approved in the second Rock Island case. Spellacy, as an individual, states that he intends to operate as an auto transportation company for the transportation of property over definite routes between definite points and termini, and that "the schedule of rates, fares and charges to be collected for the transportation service are the tariff of rates, fares and charges filed and published by applicant, and in accordance with the law and the rules and regulations of the Commission pertaining to an auto transportation company." Thus, Spellacy is placing himself under the supervisory power of the commission with respect to

common carriers by motor vehicles as prescribed by §§ 221.01 to 221.17. Under his plan of operation, Spellacy is the transportation company to be regulated, and to be regulated as are other auto transportation companies. It is Spellacy who must file tariffs, schedules, and like data, and whose facilities, accounts, services, and operations must be subject to regulation by the commission.

Although we held in the second Rock Island case that the certificate of convenience and necessity which the commission issued was in excess of the commission's power because of offensive features in the plan submitted by applicant, which features we have pointed out, we did specifically hold that the commission had jurisdiction to hear the auto transportation company's application and to make its determination in connection therewith, provided the order made did not exceed its prescribed powers. The terms of the certificate of convenience and necessity, which the commission might issue after a hearing on the Spellacy application, may or may not exceed its power. Section 221.08 provides:

"* * * The commission may issue the certificate as prayed for, or issue it for the partial exercise only of the privilege sought; and may attach to the exercise of the rights granted by such certificate, such terms and conditions as, in its judgment, the public convenience and necessity may require."

We are asked in this proceeding to prevent the commission from hearing Spellacy's application at the times and places designated by the commission. In our opinion, as we said in the second Rock Island case, the commission has jurisdiction to hear the application and to make a determination in connection therewith, provided the order which it will thereafter make does not exceed its prescribed powers.

Costs and disbursements will be allowed to the prevailing party. Alternative writ of prohibition discharged.

MR. CHIEF JUSTICE LORING took no part in the consideration or decision of this case.