## INTERSTATE COMMERCE COMMISSION v. MOLAND BROS. TRUCKING CO.

### Civil Action No. 395.

District, D. Minnesota, Fifth Division.

June 22, 1945.

Wm. P. Murphy, Asst. U. S. Atty., of St. Paul, Minn., George H. English and Gregory U. Harmon, both of Washington, D. C., and Herman L. Bode, of Minneapolis, Minn., for plaintiff.

Amasa Wheeler and Herbert M. Burns, both of Duluth, Minn., and Claude J. Jasper, of Madison, Wis., for defendant.

JOYCE, District Judge.

An injunction is sought here by the Interstate Commerce Commission to prevent Moland Bros. Trucking Company, hereinafter referred to as "Moland," from rendering motor carrier service between the Twin Cities and certain points in Wisconsin on U. S. Highways 8 and 63 unless and until a certificate of public convenience and necessity is issued authorizing such operations. Moland contends it already has authority for these operations. The facts are stipulated and the determination depends solely upon the construction of certain orders of the Commission.

Prior to December 8, 1941, the Flambeau Freight Lines, a partnership, hereinafter referred to as "Flambeau," held a certificate of public convenience and necessity for motor carrier operations between the Twin Cities and Duluth, Minnesota, via Chippewa Falls, Abbotsford and Ashland, Wisconsin, with a connecting service to Bayfield and Ladysmith, Wisconsin. Upon

the map these routes appear roughly as three sides of a rectangle. On December 31, 1942, Flambeau in a proper proceeding was issued a certificate of public convenience and necessity authorizing "closed door" operations between Ashland, Wisconsin, and the Twin Cities over U. S. Highways 63, 8 and 61; and between Ladysmith, Wisconsin, and Turtle Lake, Wisconsin, over U. S. Highway 8. The order of the Commission specified that the above operations were "for operating convenience only" and "service is not authorized to or from intermediate points." The report of the Commission (James W. Saunders and James R. Welty—Alternate Routes, No. MC-46415 (Sub No. 2) decided December 5, 1942, clearly indicates the reasons for granting these alternate routes to Flambeau:

"It will be noted, therefore, that savings in mileage of from 85 to 108 miles may be realized, if the instant application is granted, in connection with the movement of traffic between the Twin Cities, on the one hand, and Ashland, Bayfield, and Ladysmith, on the other. Service will be maintained as usual on the presently authorized routes, but the proposed short-cut routes would be used in connection with the movement of truckload shipments from and to the Twin Cities.

"It is readily apparent that substantial savings in time and operating costs would be realized by the use of the short-cut routes discussed. Applicant now enjoys a substantial amount of business between the Twin Cities and such points as Ashland, Bayfield, and Ladysmith, and much of this traffic could well be routed over the proposed alternate routes (1) and (2). No new points are proposed to be served, and the sole purpose of the instant application is to effect operating economies and, incidentally, to render a more expeditious service. Applicants' operating revenues have materially decreased due to the curtailment of production of many articles formerly handled in the territory, and a corresponding reduction of operating costs is said to be imperative in order to keep the business going.

*    *    *    *    *

"The granting of the instant application, insofar as routes (1) and (2) are concerned, will not affect the interests of any protesting carrier. It will merely permit applicants to realize certain operating economies by reason of the resultant saving in gasoline, rubber, and wear and tear on equipment. Under the circumstances, we are of the opinion that the application should be granted in that respect, especially in view of the present necessity for conserving existing motor carrier equipment."

In 1941 Moland operated an authorized motor carrier service between Duluth, Minnesota and Chippewa Falls, Wisconsin, and other points not material here. It did not serve the Twin Cities. In 1942 it commenced proceedings to purchase the Flambeau lines, which was approved by the Commission September 7, 1943 (Clarence Moland, et al—Purchase—No. MC-F-1813), Moland thereby acquiring all the rights which Flambeau had and concerning which the Commission's report stated:

"Which rights are herein authorized to be unified with rights otherwise conferred in vendee, with duplications eliminated;"

It is the different interpretations of this language that has given rise to this lawsuit.

The Flambeau alternate routes between Ashland and the Twin Cities and between Ladysmith and Turtle Lake traversed parts of U. S. Highways 63 and 8 which Moland previously had the right to use and serve. It is Moland's contention that its acquisition of Flambeau's rights "with duplications eliminated" gives it the right to disregard the closed door restriction imposed upon Flambeau over those portions where the routes were "duplicated." The effect of this construction is that Moland is now accepting freight at the Twin Cities and transporting it to Cumberland, Barron, Minong and Rice Lake, Wisconsin, directly over U. S. Highways 8 and 63. It is conceded that such shipments could be accepted and moved over U. S. Highways 12 and 53 via Eau Claire and Chippewa Falls, but the question is whether Moland can use Highways 8 and 63 for this purpose without further authority from the Commission.

The language of the Commission's report granting these alternate routes to Flambeau and which is quoted above is very clear. It was for operating convenience only and no new service was contemplated or authorized but on the other hand was expressly forbidden. It would obviously be a great saving on through shipments to the Twin Cities from Ashland or Ladysmith to use the direct routes over 63 and 8 rather than the circuitous

routes through Abbotsford and Chippewa Falls. Before the consolidation Flambeau trucks traveling these routes could not interchange with Moland trucks which served some of the intermediate points. I cannot see how the purchase of Flambeau by Moland could enlarge any rights that either might have or create any new rights which were not previously authorized. It is a well recognized principle of law that a vendee can acquire no more rights than his vendor possessed. The answer to Moland's contention is simply illustrated by considering that direct service from the Twin Cities to the points in question over Highways 8 and 63 was impossible before the consolidation under the authority granted to Flambeau and Moland combined. It therefore does not exist now after the consolidation.

Moland's error lies in considering that where Flambeau's alternate routes and the same highways that Moland previously had the right to use and serve coincided, there was a "duplication." That is inaccurate. One carrier had the right to serve the territory along the highway—the other only the right to use it as a part of a through haul. Such rights are not "duplications" and so were not "eliminated" by the Commission's order.

■ It is true that the Commission itself seemed confused in what authority it had granted to Flambeau. In its report on the purchase (Clarence Moland—Purchase—J. W. Saunders and J. R. Welty, No. MC–F–1813) in stating the facts, it was said:

"Vendees' present operations duplicate those of vendor's except between Prentice and Cameron; St. Paul and Turtle Creek (sic); a point just north of Trego and intersection of U. S. Highways 63 and 2, over U. S. Highway 63; and between Eau Claire and the Twin Cities and nearby points."

The inference is left that other points not mentioned are duplications, which would support Moland's contention. But I do not believe that the above language constitutes an overruling or an enlargement of the specific order granting the alternate route to Flambeau (MC–46415 (Sub No. 2). I doubt that this question was even considered in the purchase proceeding. In the first place there is no "Turtle Creek," Wisconsin, and if Turtle Lake were meant the statement is irreconcilable because neither carrier had authority to serve that point. The principal bone of contention in the purchase proceeding was the fact that the unification would give Moland a direct route from the Twin Cities to Milwaukee and Chicago which it did not previously have, in competition with other carriers who protested. Other than the language quoted, there is nothing to support the contention that the Commission considered Moland's routes and Flambeau's alternate routes as duplications. It is merely a part of the statement of facts, even as such is inaccurate, and to my mind is of no controlling importance.

Moland finds some comfort in the case of Wilson Stor. & Transfer Co.—Purchase—Flamming Motor Express, 35 M. C. C. 231, where it was held that the vendee by purchase acquired the right to interchange at Mankato, Minnesota, through which it previously had only closed door rights, where the vendor had the right to serve Mankato as the terminus of another route. This principle was overruled or at least rejected in the later case of Day's Transfer, Inc.—Purchase—Hauer, 39 M.C.C. 339, where the Commission said:

"The basis for the principle in the more recent cases is that the point of physical connection of the routes of vendee and vendor, in this case Ypsilanti, must be a point authorized to be served by both carriers before through service such as that found permissible in the Wilson case would be lawful. Such service would be entirely different from that which vendee and vendor may now lawfully afford in combination."

I think this view to be correct and controlling here.

■ One more point requires clarification, that is, the status of Turtle Lake, which is the junction point of U. S. Highways 8 and 63. Moland has no right to serve this point; that is, it cannot initiate, deliver or interchange with other carriers there. However, the rights given to Flambeau specify Turtle Lake as the terminus of the alternate route from Ladysmith and I see no restriction or reason why Moland should be prevented from interchanging with its own trucks at Turtle Lake freight destined to or coming from the Twin Cities. That is, freight destined to the Twin Cities from Ladysmith could be carried to Turtle Lake on one truck and transferred there to another Moland truck bound from Ashland to the Twin Cities via Highways 63 and 8 without fur-

ther authority from the Commission. The decree will be conditioned accordingly.

An injunction in accordance with the views herein expressed will be entered. Findings of Fact, Conclusions of Law and Order for Judgment will be filed in accordance with the foregoing, which counsel for plaintiff may submit. Defendant is accorded an exception.