CENTRAL TRUCK LINES, INC., et al., v. RAILROAD COMMISSION OF THE STATE OF FLORIDA, ET AL.

27 So. (2nd) 658             June Term, 1946
October 25, 1946             Division B
Rehearing denied November 6, 1946

*John M. Allison,* for petitioners.

*Lewis W. Petteway,* for Florida Railroad Commission and *A. Pickens Coles,* for Tamiami Trail Tours, Inc., respondents.

THOMAS, J.:

This cause reaches us on petition for certiorari to review an order of the Railroad Commission (No. 1884) granting Tamiami Trail Tours, Inc., permission to furnish through freight service between Jacksonville and Miami.

To determine the controversy it will be necessary for us first to give briefly the history of the operations of petitioners, Central Truck Lines, Inc. and Great Southern Trucking Company, respondent, Tamiami Trail Tours, Inc., also St. Johns River Line Company, and to refer to a previous order of the commission (No. 1831).

Under authority of the Railroad Commission the petitioners operate trucks for the carriage of freight between Jacksonville and Miami over U. S. Highway No. 1, which skirts along the east coast of the state. St. Johns River Line Company originally operated trucks between Jacksonville and St. Cloud via Orlando, while Tamiami Trail Tours, Inc., has been for some time carrying freight between St. Cloud and Miami via the Lake Region.

Tamiami Trail Tours, Inc., negotiated for the purchase of the "certificated rights" of St. Johns River Line Company, and in accordance with the statute, Section 323.03 (5), and F.S.A., these two companies jointly petitioned the Railroad Commission to sanction the transfer. Apparently the next step in the proceedings was service of notice by the secretary of the Railroad Commission that on 25 January 1946, a hearing would be held at Tampa to consider this joint application. At the place and time appointed testimony was introduced before the commission and all the corporations to which we have referred were present by counsel.

We pause now to observe that it must have been apprehended by the Railroad Commission as well as by the present petitioners that the matter immediately to be considered by the Railroad Commission was the transfer itself and the at-

tendant question of imposing restrictions to safeguard or improve facilities in the interest of the public, Sec. 323.03 (5) Florida Statutes 1941, and F.S.A. while the proposition potentially to be decided was the effect of the transfer upon petitioners, if from the consolidation of routes through service should be inaugurated between Jacksonville and Miami in competition with petitioners.

That this situation was contemplated by the parties, as well as the commissioners, is plain to us from the recitals in the order (No. 1831), entered pursuant to the hearing in Tampa, which we now propose to give in detail. After statement of appearances of counsel there appears the recital that the applicants sought "to secure the . . . approval of the transfer of Certificate of Public Convenience and Necessity No. 80, together with all extensions thereto, from St. Johns River Line Co. to Tamiami Trail Tours, Inc." Immediately following is the recital that the "protestants," petitioners in the present proceeding, objected to the transfer unless restrictions were imposed on the transferee precluding inauguration of a through service from Jacksonville to Miami "over the combined operations of St. Johns River Line Co. and Tamiami Trail Tours, Inc." Then, as if to emphasize the limited purpose of the hearing, the commission found, as a matter of law, citing University City Transfer Company v. Florida Railroad Commission, 124 Fla. 308, 168 So. 413, that where a certificate attempted to be assigned had not been revoked it was not necessary for the transferee to establish to the satisfaction of the Railroad Commission the existence of *public convenience and necessity,* as in the case of an original application for a certificate to operate. The attitude of the commission indicated by what we have already written in analyzing the order is stressed by the next reference in it to the opinion in the case of Central Truck Lines, Inc., et al., v. Railroad Commission et al., 118 Fla. 555, 160 So. 26, where it was decided that separate certificates could not be combined to establish a through service without first obtaining a certificate of public convenience and necessity, as in the case of an original application. To cap these recitals the commission commented that the separate operation should be maintained

in the present status until the commission directed otherwise "upon a showing of public convenience and necessity" and that no through service should result from the union "until duly applied for and proper showing [had been] made," also that "the question of through service . . . is not now properly before the Commission and should not be considered . . . " Following all this, the commission simply ordered that the transfer of certificate No. 80 be approved. The order was signed by the chairman, and so far as the record reveals there was no dissent.

Summarizing, the commission committed itself to the position that the immediate question of the transfer, which did not involve public convenience and necessity, would be decided; that the potential question of extended service, which did involve public convenience and necessity, would be deferred.

On 9 March 1946, the applicants for approval of the transfer presented to the Railroad Commission a paper entitled "Petition of Application for Clarification of Order No. 1831 and Other Relief," in the body of which there was a prayer that through service might be authorized on the evidence adduced at the hearing of 24 January 1946, and such other evidence as the commission might entertain. Without additional testimony and, so petitioners charge, without further notice, the commission entered an order granting the through service based upon the testimony theretofore taken at a time when, to repeat, the interested parties obviously understood that the sole matter under consideration was approval of the assignment. To this last order, signed by a member of the commission as acting chairman, there was a dissent on the part of the member who had signed the first one as chairman. In the dissent he expressed the opinion that no consolidation should be allowed or through service permitted until a hearing on an application therefor and proof that public convenience and necessity required the new through service. We think he was exactly right.

It may be that the testimony adduced at the original hearing was sufficient to show that public convenience and necessity required the inauguration of through service over the

combined routes and, at least for the moment, it does not seem appropriate to challenge the ruling of the commission that testimony already taken could be used at a subsequent hearing. It is plain to us, however, that in the procedure we have recounted protestants, petitioners here, could have been, and probably were, thrown off their guard. Even though the testimony taken might have shown such to have been justified, the fact remains that they had every reason to believe that they were not required to meet the issue of presence or lack of public convenience and necessity which would arise from a request for permission to institute through service upon sanctioning union of the lines. They may well have desired to introduce more evidence if the scope of the inquiry was to be enlarged to include the subject of public convenience and necessity.

Without making any excursion into the facts developed in that hearing in so far as they were pertinent to the broader issue, we say simply that the Railroad Commission did not proceed according to the requirements of law when on a petition for clarification they granted, *munc pro tunc,* a permit to inaugurate the new extended service.

The order of the Railroad Commission No. 1884 is quashed.

CHAPMAN, C. J., BROWN, J., and BARNS, Circuit Judge, concur.