## MURPHY MOTOR FREIGHT LINES, INC. v. WITTE TRANSPORTATION COMPANY.

110 N. W. (2d) 296.

July 14, 1961—No. 38,239.

*Bundlie, Kelley & Torrison, Jerome B. Simon,* and *Mandt Torrison,* for appellant.

*Mackall, Crounse, Moore, Helmey & Holmes, Perry R. Moore,* and *Clay R. Moore,* for respondent.

Murphy, Justice.

This is an appeal from an order of the district court denying a new trial after affirmance of an order of the Railroad and Warehouse Commission ordering appellant, Witte Transportation Company, to cease and desist from accepting freight for transportation between the Twin Cities metropolitan area and Winona and between the Twin Cities metropolitan area and Owatonna.

The proceedings were instituted upon the complaint of Murphy Motor Freight Lines, Inc., which operates as a regular route common

carrier[1] of freight under a number of certificates issued by the Minnesota Railroad and Warehouse Commission, one of which authorizes it to operate as such between the Twin Cities and Winona via U. S. Highway No. 61; between the Twin Cities and Owatonna via U. S. Highway No. 65; and from the Twin Cities south on U. S. Highway No. 169 to Mankato. Murphy has possessed authority and maintained motor carrier service between said points for over 30 years. Witte Transportation Company is a regular route common motor carrier, and among other operations is authorized to conduct the business of transportation of freight between the Twin Cities and Rochester over U. S. Highway No. 52. It also has a "cross-state" authorization from Rochester to Owatonna and from Rochester to Winona. The complaint alleged that in January or February of 1959, without authority from the commission and in violation of Minn. St. 221.021,[2] Witte wrongfully commenced transportation of shipments of property originating in the Twin Cities to Winona and Owatonna and also originating in Winona and Owatonna to the Twin Cities. The complaint further alleged that the asserted unlawful operation had caused damage to the complainant in loss of business.

As a defense Witte asserts that it is the holder of certificates "authorizing transportation service * * * between the Twin Cities and Rochester, Minnesota; and certificates authorizing service between Owatonna and Winona through Rochester, Minnesota; or between Rochester and Owatonna; or between Rochester and Winona; that some of said certificates were acquired in proceedings described in

---

[1] The term "regular route common carrier" is defined by Minn. St. 221.011(8) as meaning "any person who holds himself out to the public as willing to undertake for hire to transport by motor vehicle between fixed termini over a regular route * * *."

[2] Minn. St. 221.021 provides: "No person shall operate as a motor carrier without a certificate or permit in full force and effect with respect to such operation. Any certificate or permit shall be suspended or revoked upon conviction of violating any provision of sections 221.011 to 221.291 or any order, rule or regulation of the commission governing the operation of motor carriers and upon a finding by the court that the violation was wilful."

Section 8 of Chapter 185, Minnesota Laws, 1925; and some were acquired by transfer by authorization of the Commission in proceedings permitted by Section 9, Chapter 185, Minnesota Laws, 1925; and subsequent re-enactments thereof." It further asserts in its answer that all of its operations between the Twin Cities and Winona are pursuant to "combinations of certificates" issued or transferred to it.

It appears that Witte is the holder of at least ten authorizations from the Minnesota Railroad and Warehouse Commission which reach into southeastern Minnesota, including four which it has acquired by assignment. For the purpose of this decision it is not necessary to refer to all of them. It appears that its basic authorization was acquired under A. T. C.[3] Order No. 139, issued on June 3, 1927, granting a certificate of public convenience and necessity to render service between the Twin Cities and Rochester over what is now U. S. Highway No. 52. Next in importance is A. T. C. Order No. 284 issued January 10, 1929, granting a certificate of convenience and necessity to operate between Rochester and Owatonna and certain intermediate points and between Winona and Rochester and intermediate points. This authorization gave Witte a "cross-state" route which extended east and west from Rochester, the southern terminal of its route provided for in A. T. C. Order No. 139. The third authorization of significance is identified as A. T. C. Order No. 1241-5, which Witte acquired by assignment from the Minnesota-Wisconsin Truck Lines, Inc., in May 1955. This route likewise is a "cross-state" authorization which parallels the route granted to Witte under A. T. C. Order No. 284. Witte is also the owner of five other intrastate routes which branch off from the Owatonna-Rochester-Winona route.

It is the contention of Witte that A. T. C. Order No. 284 gives it the right to operate a single-line service between the Twin Cities and Owatonna and the Twin Cities and Winona. It is its further claim that it has, by purchase of the Minnesota-Wisconsin route, acquired the right to operate a single-line service between the Twin Cities and Owatonna, between the Twin Cities and Winona, and the reverse. The Railroad and Warehouse Commission and the district court refused

---

[3]A. T. C. is the abbreviation for Auto Transportation Company.

to accept Witte's claims. The commission held in fact that Witte has never received authority to operate a single-line route between the metropolitan area of the Twin Cities and Winona or between the metropolitan area of the Twin Cities and Owatonna. They further held that a single-line authorization could not be created by the legal device of "tacking" or the combination of two separate routes to result in a single, consolidated route extending between the terminals of each. They held in effect that by allowing such a unification, a new right would be created, and they observed:

"* * * we do have in mind also that in no case was the issue of public convenience and necessity for the transportation of freight between the Twin Cities and Winona and Owatonna presented to the Commission by the respondent or any of its predecessor owners for determinative findings and order."

They accordingly held that the Witte Transportation Company did not hold certificates authorizing the transportation of freight between the points in question as required by law, and the district court agreed.

■ We will first consider Witte's contention that it acquired the right to conduct a single-line service between the Twin Cities and Winona and the Twin Cities and Owatonna under A. T. C. Order No. 284. We have carefully examined this particular order. As already indicated, it gives to Witte a certificate to operate on Highways No. 7 and No. 57 between Rochester and Owatonna and on Highways No. 3 and No. 7 from Winona to Rochester. Nothing is said in this order which would indicate that the commission intended to give to Witte a through route from the Twin Cities to either Owatonna or Winona. The contrary is very apparent. The findings recite:

"Applicant [Witte], however, does not propose to accept St. Paul and Minneapolis freight to Winona or to Owatonna. Winona and Owatonna are more directly served by the scheduled trucks of the Murphy Transfer and Storage Company."

Moreover, it appears from an amended application dated September 28, 1928, that Witte did not request authority to transport goods originating in Minneapolis and St. Paul destined to Winona and the

reverse. The application was made with the understanding that the certificate would be issued with that restriction. The appellant, however, seems to argue that because the restriction is not expressly stated in the order itself it somehow acquired the rights it claims. It argues in its brief:

"Here the plain language of the order authorizing operation between Rochester and Owatonna and Rochester and Winona contains no reference whatever to a restriction as to Twin Cities freight."

This argument may be briefly disposed of. Neither in the words of grant contained in the order or in the findings upon which the order is based can the asserted authorization be found. The findings specifically recite that under the proposal contained in Witte's application for certificate through service from the Twin Cities to Winona or Owatonna was not requested. It is apparent that the application for the authorization was for a cross-state route and the grant of authorization in the order was limited to a cross-state route. A. T. C. Order No. 284 was issued in 1929. Witte made no attempt to exercise the asserted authorization until 1959. The record does not contain a reasonable explanation as to why Witte waited 30 years to do so.

■ The next contention of the appellant seems to be that it has acquired a single-route authorization by means of its purchase of the cross-state route from the Minnesota-Wisconsin Truck Lines, Inc. In 1955 Witte and Murphy purchased for the sum of $25,000 from Minnesota-Wisconsin Truck Lines, Inc., a route extending cross-state from La Crescent and Winona to Owatonna and Mankato over U. S. Highway No. 14. Each paid half of the purchase price. When this transaction was entered into it was understood that Witte and Murphy were acquiring only such authority as Minnesota-Wisconsin had to sell. We are told by the witness F. M. PaDelford, who at the time of the transfer was Witte's general manager, that:

"* * * Murphy and Witte purchased the line from the Wisconsin border to Mankato, and it was understood between Murphy and myself that we would take the points that we served and they would take the points that they served. Therefore, neither one of us would ac-

quire any more new authority in the purchase. It was an elimination of a competition to points that did not need a two-truck-line service.

\* \* \* \* \*

"Q. \* \* \* Was it your intention at the time, with reference to whether or not Witte's rights would have been enlarged, so as to include Winona and Owatonna?

"A. There was no intention of that."

We think the commission correctly found:

"\* \* \* It is obvious that the purpose of respondent [Witte] and complainant [Murphy] in purchasing the Minnesota-Wisconsin Truck Lines, Inc., rights was to eliminate a competitor and not to enlarge the rights of either transferee."

But the appellant seems to claim that under Minn. St. 1953, § 221.09,[4] it has acquired a new right. It argues that implicit in the authorization of the commission approving the assignment of the Minnesota-Wisconsin certificate to Witte there was created a consolidated route by joining authorizations A. T. C. Order No. 139 (Twin Cities to Rochester) and A. T. C. Order No. 1241-5 (Owatonna and Winona through Rochester), so as to make one route on which it may accept, without a further certificate of public convenience and necessity, shipments of property originating in the Twin Cities to Winona or Owatonna and to transport shipments of property originating in Winona or Owatonna to the Twin Cities. In other words, the claim is that the approval of the transfer by the commission created a new

___

[4]This statute, originally L. 1925, c. 185, § 9, permitted the sale, assignment, or lease of a certificate as property, providing: "Any right, privilege, or certificate held, owned, or obtained by any auto transportation company may be sold, assigned, leased, or transferred as other property only by the authorization of the commission." It was repealed by Ex. Sess. L. 1957, c. 17, § 31, and its provisions incorporated in § 221.081. The new act contemplates that in determining whether to approve such transfers the commission shall take into consideration the effect of the transfer upon the public and other motor carriers.

right which previously neither Witte nor Minnesota-Wisconsin Truck Lines had.

In considering the validity of this argument it should be noted that with certain exceptions not material here motor carriers may operate in intrastate commerce only by specific authority issued to them by the commission. Minn. St. 221.021 provides in part:

"No person shall operate as a motor carrier without a certificate or permit in full force and effect with respect to such operation." The statutory predecessor of § 221.021 is L. 1925, c. 185, § 5 (a), which provided:

"No auto transportation company shall hereafter operate for the transportation of persons or property for hire as a common carrier on any public highway without first having obtained from the Commission under the provisions of this act a certificate declaring that public convenience and necessity require such operation."

It seems clear that since enactment of the original act, L. 1925, c. 185, no auto transportation company or regular route common carrier may engage in any operation without there being in effect a certificate of public convenience and necessity with respect to such operation.

The appellant relies upon what it refers to as the legal principle of "tacking"[5] and argues that it occurs—

"* * * when a single carrier acquires both of the connecting routes. The need to interchange ends since one carrier has authority to operate over the over-all route.

"Tacking occurs because the certificates of authority permit operation over each route without regard to the destination of the freight being carried. There is, therefore, nothing in the certificate to restrict operation over the combined route."

_____

[5]The appellant defines "tacking" as "where a carrier which is authorized to operate over a route between points A and B acquires the authority to operate over a route from B to C, *without restriction,* the carrier thereafter is authorized to operate over the combined routes from A to C through B."

The subject of "tacking" is discussed in numerous administrative decisions of motor carrier cases by the Interstate Commerce Commission.[6] We do not understand the term to identify or define a device which creates new rights as a result of the combination of two connecting routes. The term is synonymous with "unification, combination, consolidation, or joining of authorities."[7] Like any other consolidation of routes, its validity and effect must depend on a great variety of circumstances depending upon the nature of the rights involved, the nature of the routes, commodities and restrictions, and the interests of the public and competing carriers.

The appellant relies on Century-Matthews Motor Freight, Inc. v. Thrun (D. Minn.) 75 F. Supp. 734, affirmed (8 Cir.) 173 F. (2d) 454. There is language in that case to the effect that where a motor carrier in interstate commerce holds two separate and unrestricted grants of authority which have a point common to both to which the carrier is authorized to transport a given shipment under one authority and from which it is authorized to transport the same shipment under another separate authority, the carrier may furnish through service on the shipment under a combination of the two separate authorities, provided the operation is conducted through the common point. From this decision it appears that the Interstate Commerce Commission has the power to combine separate grants of authority into one operating authority without special proof of public convenience and necessity after such carriers are merged or otherwise unified. Important distinctions between that case and the one before us immediately suggest themselves. To begin with, the decision relates to interstate rather than intrastate commerce and reflects the exercise of a power vested in the Interstate Commerce Commission by Federal law. The court was of the view that the Interstate Commerce Commission could exercise this power by issuing a new certificate combining separate grants without additional proof and finding of convenience and necessity for the

---

[6]See, Proctor, *Authorities and Rights of Interstate Truckers*, c. 13, § 12; Bernard, *Tacking or Combining of Interstate Operating Rights*, 26 I. C. C. Practitioners' Journal, p. 521, and authorities cited therein.

[7]Proctor, *Authorities and Rights of Interstate Truckers*, c. 13, § 12.

through operation. It is significant that, although hearings were not held, the merits of the consolidation were considered by the commission and a new certificate granting the asserted right was issued. We do not consider that case to be controlling.

We have not been cited to Minnesota statutes which authorize the Minnesota Railroad and Warehouse Commission to issue a new certificate creating new rights without hearings on the issues of public interest and necessity. Nor do we have before us a consolidation approved by the administrative agency charged with the responsibility of administering motor carrier transportation rules. The only relevant order of the Minnesota Railroad and Warehouse Commission was that made pursuant to statute which authorized the assignment to Witte of the certificate formerly held by Minnesota-Wisconsin Truck Lines, Inc. This order authorized the transfer and nothing more. It did not in any way enlarge the rights which either carrier had under their certificates. The authorization of transfer did not create a new operating right.

We are persuaded, moreover, that in interstate commerce proceedings applications for transfer or purchase of interstate operating rights are differently treated than are applications for transfer of intrastate operating rights under state law. It is apparent from the authorities that the Interstate Commerce Commission recognizes that where such application for transfer contemplates a single-line service, where formerly the applicant carrier participated only as a joint-line carrier, a new service is proposed which can have a profound effect competitively on existing carriers.[8] The authorities indicate that where existing carrier service is adequate such purchase applications are denied. Herrin Transp. Co.—Purchase—Mobile Exp. Inc. 58 I. C. C. 59; Super Service Motor Freight Co. Inc.—Purchase—Hayes Freight Lines, Inc. 58 I. C. C. 137; Coast Line Truck Serv. Inc.—Control and

---

[8]See, also, T. S. C. Motor Freight Lines, Inc. v. United States (S. D. Tex.) 186 F. Supp. 777, 793. A three-judge court in discussing a consolidation proceedings said that "it is incorrect to attempt to justify new service between Beaumont-Orange and Houston on the principle of 'tacking.' " This decision seems to hold that tacking will not be approved where there is a failure to show a necessity for the particular service involved.

Merger—Clark Bros. Motor Transport, Inc. 58 I. C. C. 115; Navajo Freight Lines, Inc. v. United States (D. Colo.) 186 F. Supp. 377; T. S. C. Motor Freight Lines, Inc. v. United States (S. D. Tex.) 186 F. Supp. 777. We think the most apt statement of law applicable to the situation presented here is that made by Judge Joyce in the case of Interstate Commerce Comm. v. Moland Bros. Trucking Co. (D. Minn.) 62 F. Supp. 921. That case involved the assignment of an authorization issued by the Interstate Commerce Commission from Flambeau Freight Lines to Moland Brothers Trucking Company. Judge Joyce said (62 F. Supp. 923):

"* * * I cannot see how the purchase of Flambeau by Moland could enlarge any rights that either might have or create any new rights which were not previously authorized. It is a well recognized principle of law that a vendee can acquire no more rights than his vendor possessed. The answer to Moland's contention is simply illustrated by considering that direct service from the Twin Cities to the points in question * * * was impossible before the consolidation under the authority granted to Flambeau and Moland combined. It therefore does not exist now after the consolidation."

It is also significant to note that Century-Matthews Motor Freight, Inc. v. Thrun (8 Cir.) 173 F. (2d) 454, 457, recognized that "[i]nstances are cited when State regulatory authorities have required proof of convenience and necessity under these circumstances. Those decisions were, no doubt, influenced by the local statutory law." It is apparent from the authorities that state courts generally hold that no single-line through service should be permitted until a hearing on an application for that right is had and proof submitted that public convenience and necessity require the new through service. It was pointed out in West Shore Express, Inc. v. Public Service Comm. 264 Wis. 65, 70, 58 N. W. (2d) 407, 409, that approval of an application granting transfer of an intrastate authorization "conferred no new operating rights, so that if and when [the assignee] proposed to give single-line service to the combined route it would be necessary for it to obtain an amendment to its certificate * * * with proof of public convenience and necessity." The court went on to say:

"* * * If, then, in combining the two systems, West Shore does conduct what the commission considers single-line operation the commission has the same power to interfere that it has when any carrier operates outside its authority; * * *."

See, also, Eastridge v. Southeastern Greyhound Lines, 280 Ky. 392, 133 S. W. (2d) 95; Central Truck Lines, Inc. v. Railroad Comm. 158 Fla. 68, 27 So. (2d) 658; Enid Transfer & Storage Co. v. State, 201 Okl. 274, 190 P. (2d) 150. In all of these cases a carrier had claimed the right under state law to "tack" so as to render an intrastate through service between the extreme terminal points of routes having a common point and formerly covered by separately owned certificates. These courts held that such a claim, if accepted, would allow the creation of a new service without proof or a finding of public convenience and necessity which would be contrary to the purpose and intent of the laws of those states. To the same effect see, also, Russell v. Calhoun, 51 Wyo. 448, 68 P. (2d) 591; Central Truck Lines, Inc. v. Railroad Comm. 118 Fla. 555, 160 So. 26; Pennsylvania R. Co. v. Public Utilities Comm. 116 Ohio St. 80, 155 N. E. 694; Modern Transfer Co. v. Pennsylvania Public Utilities Comm. 179 Pa. Super. 46, 115 A. (2d) 887; Albrent Freight & Storage Co. v. Public Service Comm. 263 Wis. 119, 56 N. W. (2d) 846, rehearing denied, 263 Wis. 119, 58 N. W. (2d) 410.

We conclude that the commission was correct in finding that Witte, in attempting to operate a single-line through transportation route from the Twin Cities to Owatonna and Winona terminals, exceeded its authority. Section 221.071 provides that before a certificate granting an operating right may issue the commission must find "that the applicant is fit and able to properly perform the services proposed and that public convenience and necessity requires the granting of the application or any part thereof."[9] It is true, as Witte contends, that "every

---

[9]Prior to the enactment of § 221.071 (Ex. Sess. L. 1957, c. 17, § 7), the controlling considerations that the commission must take into account were contained in L. 1925, c. 185, § 8, wherein the commission was required to give reasonable consideration to "the interests of the public that might be affected thereby * * * to the transportation serv-

mile over which Witte has operated is fully authorized by outstanding orders," but the merit of this argument vanishes in light of the recognized fact that many certificates are issued which allow motor carrier operations over specified highways but which do not authorize the carrier to accept or deliver freight at towns and cities located on those highways because of the lack of need for service at those points.

It is not for us to say that the commission is arbitrary or unreasonable in denying Witte the right to engage in through one-way transportation of freight to the points in question. Whether such action is arbitrary and unreasonable cannot be determined until a hearing is had at which both parties here and all other interested parties are heard on those considerations recited in § 221.071 which bear upon the issues of public convenience and necessity, the interests of the public, and the effect the certificate may have upon other transportation service essential to the communities served.[10]

It should be unnecessary for us to again repeat that under our statutes there rests upon the appellant the burden to overcome by clear and convincing evidence the reasonableness of the commission's order.[11] It is provided by § 216.25 that the findings of the Railroad and Warehouse Commission "shall be prima facie evidence of the matters therein stated, and the order shall be prima facie reasonable, and the burden of proof upon all issues raised by the appeal shall be on the appellant." There is nothing in the record to inform us as to how substantial or significant is the right which Witte claims, or the extent to which Murphy may be prejudiced by the exercise of the as-

---

ice being furnished by any railroad * * * to the likelihood of the proposed service being permanent and continuous throughout 12 months of the year and the effect which such proposed transportation service may have upon other forms of transportation service which are essential and indispensable to the communities to be affected by such proposed transportation service * * *."

[10]State v. LeFebvre, 174 Minn. 248, 219 N. W. 167; Monson Dray Line, Inc. v. Murphy Motor Freight Lines, Inc. 259 Minn. 382, 107 N. W. (2d) 850.

[11]State v. Duluth, M. & I. R. Ry. Co. 246 Minn. 383, 75 N. W. (2d) 398; Monson Dray Line, Inc. v. Murphy Motor Freight Lines, Inc. *supra*.

serted right. Nor are we now concerned with the merits of the dispute as they relate to the public interest. Those issues are not before us and are not dealt with in the record. We must recognize that the creation of operating authority to provide motor carrier service as a regular route common carrier under the laws of Minnesota may involve complex and difficult economic inquiry which is best left for decision to the expertise of a specialized administrative agency. The design and purpose of the Minnesota motor carrier regulatory laws contemplates that the power to create operating rights reposes in the Railroad and Warehouse Commission.

■ The appellant next asserts that the commission has by practice recognized that the holder of two unrestricted certificates of authority with common termini is authorized to operate over the combined route and cites a number of instances to support this practice. These instances, which it is said establish this practice, do not relate to adversary proceedings. But assuming that the commission has on certain occasions in the past recognized consolidation of routes in approving assignments or transfers to a single owner, that fact would not alter the basic principle that a new right can only come into existence upon an order of the commission made pursuant to an application for such new right on the basis of the considerations provided for by statute. We have been cited to no authority by the appellant to the effect that an administrative body is bound by a prior determination of that character. The doctrine of stare decisis does not apply to orders of an administrative tribunal which are in conflict with the express provisions of statutory law.[12]

■ Appellant next contends that the trial court erred in sustaining objections to evidence by which it proposed to prove that rates and tariffs authorized by the commission and published by the Middlewest Motor Freight Bureau of Kansas City, Missouri, establish that the commission has recognized the authority of Witte to carry on the through service which it asserts it has the right to exercise. It is claimed that the exhibits offered relating to rates and tariffs constitute administrative construction and interpretation of § 221.021. The particu-

---

[12] 2 Davis, Administrative Law Treatise, § 17.07.

lar point urged is that the exhibits offered would establish that the restriction originally imposed on through shipments to the metropolitan area of Minneapolis and St. Paul by a supplemental order to A. T. C. Order No. 284 was noted on earlier tariffs but later in 1958 deleted so as to indicate "unrestricted service," and that the Railroad and Warehouse Commission approved this change. From the record it appears that information contained in the tariffs originates with the carrier. The carrier passes it on to the publishing agent, after which the tariff is filed with the commission for approval. From the record it appears that the approval of rates by the Railroad and Warehouse Commission is a routine matter. In connection with the removal of the restriction on the tariff in question Sam F. Caruso, the traffic manager of the Witte Company, testified:

"Q. Now the Railroad and Warehouse Commission had no adjudication in connection with that particular removal, did they?

"A. Not that I know of.

"Q. That would be a matter of routine?

"A. Yes."

The witness Otto A. Radke, a rate expert for the commission, testified on this issue in part as follows:

"Q. Now, in making determinations of this kind, you don't assume to adjudicate rights, do you, under certificates of public convenience and necessity?

"A. Oh, no.

"Q. So that the disposition you made of this particular request on the part of the Witte Company had no relation to what their rights may have been?

"A. No, we wouldn't go into the great details of that."

The right to engage in operations as a common carrier is conferred by the certificate of public convenience and necessity. The tariff obviously confers no authority to operate. A mistake or oversight in the performance of a ministerial act by an employee of the Railroad and Warehouse Commission with relation to a tariff filed by a common carrier cannot have the effect of enlarging that carrier's rights.

Affirmed.