Application of FLORIDA REFRIGERATED SERVICE, Inc.
No. 7567-CCT.
Florida Public Service Commission.
June 16, 1965.

Lawrence D. Fay, Jacksonville, for applicant.

J. E. Allen, Tampa, for Central Truck Lines, Inc., protestant.

Sol H. Proctor, Jacksonville, for Alterman Truck Line and Belford Trucking Co., protestants.

Chairman EDWIN L. MASON, Commissioners JERRY W. CARTER and WILLIAM T. MAYO each participated in the disposition of this matter.

BY THE COMMISSION.

Pursuant to statutory notice the commission by its duly designated examiner, Harold E. Smithers, held a public hearing on this application on October 6-8, 1964 in the State Office Building, Tampa.

The examiner's report and recommended order were duly served on all of the parties and exceptions were filed thereto. The entire record herein, including the application, the testimony adduced at the public hearing, the examiner's report and recommended order, the exceptions thereto and oral argument thereon, have all been examined by the full commission. After due consideration, the commission now enters its own order in this cause.

By this application, Florida Refrigerated Service, Inc. seeks to extend its certificate no. 338 so as to authorize it to transport non-frozen food and foodstuffs that require refrigeration. Certificate no. 338 now authorizes the transportation of all types of frozen food between all points in Florida.

There is no question about the applicant being qualified in all respects to provide the proposed transportation, and is presently transporting frozen food under its intrastate authority. The applicant also has interstate authority for refrigerated commodities between certain states generally stated geographically as being between the eastern states, including Florida, and the western states of the United States. In Florida, the applicant picks up

LTL shipments on call in various parts of the state, consolidates shipments at its Dade City terminal which is also the headquarters for all its operation, and delivers from that point, with regular pickup and delivery runs being made into each area of the state two or three times a week. Truckload movements are made direct. It is presently operating 46 tractors and 53 mechanically refrigerated trailers, both intra and interstate.

The examiner has recommended that the commission grant authority only to transport seafood from certain named counties to all points and places in the state of Florida. The record supports a broader grant of authority. There were seven shipper witnesses who testified in support of this application. Five of these testified as to their need for a carrier to transport seafood. Considering the testimony of these five together, it is impossible to limit their need to the territory described in the examiner's proposed order. The record reflects that because of the nature of the seafood business, it is difficult to predict from what points in Florida shipments of seafood will originate. This, of course, depends on the season and supply of the seafood. It is equally difficult to determine the points of destination on such shipments because all of these shippers attempt to sell their products at practically all points in the state. One of the witnesses who testified as to his need in regard to the movement of seafood, also has a transportation need from Tampa and Miami to all points and places in the state for beef, cheeses, and canned hams. Another witness testified as to his need for shipments of candy from Jacksonville to all points and places. The remaining witness testified as to her company's need for transportation of citrus juices from Orlando to Port Orange and Jacksonville. Practically all of the witnesses testified to being dissatisfied in one way or another with the service being offered by the protesting carriers.

The protestants presented evidence generally pertaining to their respective authority, facilities, equipment and operations. Central is a regular route general commodity carrier serving the major cities in the peninsula of Florida and all cities in the central part of the peninsula. Belford may transport foodstuff requiring refrigeration from Hillsborough and Dade counties and the cities of Jacksonville and Boca Raton to all points in Florida except south of Miami in Dade County. Belford erroneously claimed it had authority to originate at any point on the east coast of Florida between Jacksonville and Boca Raton since their authority reads "between Jacksonville and Boca Raton, Florida, on the one hand, and, on the other, all points in the state. . . ." Alterman may transport non-frozen foodstuff requiring refrigeration from Dade and Palm Beach counties to points in Florida except ten miles

south of Miami in Dade County except Homestead; from all points west of the eastern boundary of Jefferson County, from points within 100 miles of Lakeland and from Jacksonville, to all points in Florida; and, between points within 100 miles of Lakeland.

Alterman erroneously claimed that it could serve all points in Florida by combining authorities granted in different proceedings to provide a through service. This is generally described as "tacking authorities". For example, if a carrier receives authority to transport commodities between point A and point B, and then at some later date receives authority to transport the same commodities from point B to point C, under the "tacking theory" the carrier could transport these commodities from point A to point C. The applicant maintains this position in the exceptions filed to the examiner's report, stating —

"The examiner failed to understand that Alterman may tack its various grants of authority. . . . The examiner apparently does not recognize tacking of authority to provide a through service even though all regular route carriers in Florida have been doing this for many years past."

The examiner was correct in holding that "tacking" is not permissible under Florida law. The Supreme Court settled this question in Central Truck Lines, Inc. v. Railroad Commission, 160 So. 26 (March 1, 1935), as follows —

"Under our statute motor vehicle operative rights under certificates separately granted cannot be lawfully combined for the establishment of a through service without first obtaining from the Railroad Commission a certificate of public convenience and necessity. *This rule is more than a rule of commission policy to be followed by the commission or not as it sees fit in its administration of the act. It is inherent in the statute itself*, because the act plainly contemplates that no prejudicial alteration shall be made in the established operative relationships of existing certificated motor carriers one with another, whether sought under the same ownership or under separate ownerships, unless the change be duly justified upon an application for a certificate of public convenience and necessity applied for and granted in the statutory mode." (Italics added.)

The Supreme Court has adhered to this proposition through many cases. It explicitly did so in Central Truck Lines, Inc. v. Railroad Commission, 27 So.2d 658 (November 6, 1946). The commission specifically sustains the examiner on this point.

The examiner was in error in allowing certain hearsay testimony into the record. One of the applicant's witnesses had testified that he had made complaints to Alterman concerning its

service. The examiner then allowed witness Alterman to testify that he had made a long-distance call to his employee and that there was no record in Alterman's office of any such complaints being made. This testimony should be stricken from the record.

From the foregoing findings of fact and conclusions of law, and on the entire record in this docket, the commission concludes that the applicant has shown that public convenience and necessity require the grant of the authority as set forth in the last ordering paragraph below, but has not shown that the public convenience and necessity require the grant of the application in any other respects whatsoever; and that the grant of this authority will not adversely affect the existing transportation facilities or transportation as a whole within the territory involved.

Therefore, in consideration thereof, it is ordered that the protestants' motion to dismiss the application be and the same is hereby denied.

It is further ordered that the hearsay testimony referred to above be and the same is hereby stricken.

It is further ordered that the application of Florida Refrigerated Service, Inc., be and the same is hereby granted so as to extend its certificate of public convenience and necessity no. 338 to authorize the transportation of commodities requiring refrigeration, but not freezing, as follows —

1. Fish group: Clams, oysters or scallops, in shell; clams, oysters or scallops, shucked (clam, oyster or scallop meats); crab or lobster meat; fish, fresh; fish roe, fresh; shrimp NOI, between all points and places in the state of Florida.

2. Meats, fresh, (beef), from Miami or Tampa to all points and places in the state.

3. Cheese, including cheese foods, from Miami or Tampa to all points and places in the state.

4. Meats, cooked, cured or preserved, NOI, from Miami or Tampa to all points and places in the state.

5. Candy or confectionery NOI or chocolate candy or confectionery, including milk chocolate candy or confectionery, from Jacksonville to all points and places in the state.

6. Juice, citrus fruits, from Orlando to Port Orange and Jacksonville.

Commissioner CARTER dissents and would adopt the examiner's proposed order as the commission order.