APPLICATION OF CALHOUN, ET AL.
RUSSELL v. CALHOUN, ET AL.

(No. 2008; May 18, 1937; 68 Pac. (2d) 591)

For the appellant, there was a brief and oral argument by *Joseph Garst* of Douglas, Wyoming.

450

For the respondents there was a brief by *Ray E. Lee*, Attorney General, and *L. C. Sampson*, both of Cheyenne, and *Harold I. Bacheller* of Casper, and oral arguments by *Messrs. Lee* and *Sampson.*

RINER, Justice.

This case is a direct appeal proceeding to review a judgment of the district court of Laramie County, affirming an order made by the Public Service Commission of the State of Wyoming.

On December 23, 1935, the same day on which G. L. Goodrich made his application to amend the certificate of Public Convenience and Necessity, which had theretofore been granted him by the Public Service Commission of this state on April 17, 1935, assigned No. 199, and considered by this court in Case No. 2007 this day decided, Goodrich, with F. C. Calhoun and Calhoun-Goodrich Lines, Inc., a Wyoming corporation, filed with said Commission a joint application for authority

to transfer the amended certificate aforesaid held by him individually and two certificates of public convenience and necessity numbered 116 and 118 respectively, held by Calhoun individually, to the corporation above named, thus to accomplish a consolidation of the several services in these certificates authorized. Certificate 199 as amended authorized Goodrich, as described in the opinion filed in Case No. 2007, aforesaid,

"to transport all freight originating at Casper, Glenrock, Douglas and Glendo destined to Dwyer, and all points East to the Wyoming-Nebraska State Line, where the same is intersected by Federal Highway No. 26 over Highway No. 26 over Highways Nos. 87, 85 and 26, and to transport all freight originating at Dwyer and all points East to the Wyoming-Nebraska State Line destined for Glendo, Douglas, Glenrock and Casper.

"PROVIDED:—No intermediate operations will be attempted by the operator or permitted by the Commission between the following points:—Torrington, Lingle, Ft. Laramie and Guernsey, West or Eastbound; also between Glendo, Douglas, Glenrock and Casper, in either direction."

Certificates numbered 116 and 118, as described in said joint application, authorized Calhoun to "operate motor vehicles as a common carrier of freight and express between the Colorado-Wyoming boundary line where the same is intersected by Highway U. S. 85 and Guernsey, Wyoming, via Torrington, Lingle and Ft. Laramie over Highway U. S. 85 and 26; also between the Colorado-Wyoming boundary line at the same highway intersection and Guernsey, Wyoming, over Highways U. S. 85, 87 and 26; also all intermediate points along and over such routes."

January 18, 1936, the Chicago, Burlington & Quincy Railroad Company and the Railway Express Agency filed a joint protest with the Public Service Commission of Wyoming, to the effect that the application afore-

said made no showing that the proposed consolidation was warranted or justified by public convenience and necessity. These protestants stated, however, that in case no protest was filed by other interested parties, these protestants consented that the Commission might enter such order upon the application aforesaid, as it found justified or required in the interest of the public and for its convenience and necessity.

Subsequently and on January 16, 1936, the appellant, L. J. Russell, doing business as Russell Transportation Company, filed his protest against the allowance by the Public Service Commission of the proposed consolidation. Summarized the objections submitted thereby were that he is now, and for a long time has been, operating as a common motor carrier under legal certificates, over a route from the Colorado-Wyoming State Line North on Highway 85 to Cheyenne, thence North on Highway 87 to Casper, Wyoming, serving intermediate points and return, and has always maintained sufficient transportation facilities along said route; that besides the service furnished by protestant, this route is supplied with more than adequate rail and motor transportation service, and he has invested large sums of money to supply the transportation needs along said route; that the allowance by the Commission of the proposed consolidation would be in effect granting an additional certificate of public convenience and necessity along said route without any finding by the Commission that public convenience and necessity required such additional service; that such action would be contrary to the provisions of Chapter 65, Laws of Wyoming, 1935, and "is but a subterfuge and an attempt to accomplish an unlawful act in a seemingly lawful manner, the granting of which application would impair protestant's investment, hamper his operations and cause him irreparable loss." Protestant

requested that a hearing be had before the Commission, and that the application aforesaid be denied.

January 21, 1936, the applicants for the consolidation filed objections to any hearing at all being held by the Commission, on the ground that such a hearing could not legally be had and that said applicants had done everything that they could be required to do to entitle them to the transfer of the certificates they held. On the 27th of that month the Commission listened to arguments on these objections to a hearing, overruled them, and immediately proceeded with the hearing on the matter of granting the application, as well as the propriety of granting the amendment sought for by Goodrich to certificate No. 199 and considered in the opinion filed in our Case No. 2007, the two matters being heard together.

In response to a request preferred by the chairman of the Commission that, "We desire the applicant to show cause why this consolidation should be made, and to show cause for the service," counsel for applicants stated: "We decline to show any cause for that, standing on our legal rights. We are willing to show our financial responsibility, that we do not owe the state and do not owe anybody else." Furthermore, in the course of protestant Russell's testimony before the Commission on the hearing, he was asked as to his investment in equipment and other transportation facilities connected with his operations over the route granted him by the certificates he held as aforesaid. Whereupon counsel for applicants objected to his answering the inquiry as calling for evidence incompetent, irrelevant and immaterial; and in that connection counsel further stated, "as long as this line of procedure of questioning continues I shall object, and object to questions of convenience and necessity on the ground that it is not involved in this hearing, and it is not the issue in this hearing. The question is whether or not

the certificate of Mr. Goodrich shall be amended, and I want to again object and except to each and every question asked under this line of examination, and until it is discontinued." Counsel's objections were overruled and the hearing proceeded to its conclusion. No evidence was introduced by applicants on the question of whether public convenience and necessity would justify the consolidation of the several certificates as proposed.

On March 20, 1936, a majority of the Commission, without making any finding of public convenience and necessity, made an order directing the transfer of the several certificates held by Goodrich and Calhoun respectively to the corporation Calhoun-Goodrich Lines, Inc., as prayed by applicants. The remaining member of the Commission and its chairman dissented from this order on the grounds, to state them briefly, that permitting such a transfer of these certificates "changes the termini of the transportation of commodities to the extent that property can be transported by Calhoun-Goodrich Lines, Inc., over a rainbow route— i. e. from Colorado-Wyoming State Line to Casper via Dwyer, Guernsey or Torrington in competition with the Russell Transportation Company, who is the Certificate carrier over the direct route"; that the majority of the Commission gave no consideration whatever to the question of public convenience and necessity, and that "public convenience and necessity could not pass with the transfer of the certificates to the corporation ipso facto without a further showing of cause or purpose."

Russell appealed from this order to the district court of Laramie County, which decided as above indicated, that the order authorizing the transfer of these certificates thus made should be upheld. Dissatisfied with that ruling, he has brought the matter from that court to this for review.

The applicants and respondents insist in effect that the holder of a certificate of public convenience and necessity can sell or transfer it to any one he chooses and for what price he desires, and that the only public interest in such a sale is the question of whether the purchaser is able and willing to operate under the certificates so transferred; and that the question of public convenience and necessity is not involved.

The provisions of the law of this state to be kept in mind in the disposition of this matter are particularly, we think, certain portions of Chapter 65, Laws of Wyoming, 1935, which are:

Section 5, which reads:

"It shall be unlawful for any common motor carrier to operate any motor vehicle on any highway for the transportation of either persons and/or property without first having annually obtained from the commission a certificate declaring that the present or future public convenience and necessity require such operation, and without paying the fees and compensatory fees provided for herein for the use of the highways and for the maintenance, repair and reconstruction of the same, and the other fees herein required. In acting upon all applications for such certificates, the commission shall take into consideration, in addition to the question of public convenience and necessity, the question of the applicant's qualifications for rendering, and his financial ability to render the necessary and proper services required to be performed."

The first sentence of Section 6, whose language is:

"Only the commission shall have the power to issue or refuse to issue a certificate or to issue such certificate for the partial exercise of the privilege sought and may attach to the exercise of the privilege granted by any certificate issued such terms and conditions as it may deem proper and which, in its judgment, it considers to be for the best interest of the public or what the public convenience and necessity require."

The first clause of Section 41:

"The commission shall hold a hearing on all applications for certificate, except such as may be granted as a matter of right,"

Section 43, which provides:

"The Highway Department, together with all transportation agencies with which the proposed service will be competitive, the complaining party, the party complained against and others deemed by the commission to be interested, are interested parties within the meaning of this section upon whom notice of hearing shall be served."

Section 62 reading:

"No certificate or permit shall be transferred without having first obtained the consent and approval of the commission thereto."

And Section 63, which directs that:

"No rate fixed by the commission and no route fixed by a certificate or permit shall be changed except by order of the commission after a hearing held for that purpose, at which hearing all interested parties have been given notice as required for hearings on applications."

In connection with these statutory requirements and directions the following authorities may properly be considered as of assistance in reaching a correct conclusion herein.

Under a motor vehicle law affecting commercial traffic, in many respects resembling Chapter 65, supra, in Pennsylvania R. Co. v. Public Utilities Commission, 116 Ohio St. 80, 155 N. E. 694, the court indicated the nature of a certificate of public convenience and necessity thus:

"This court has repeatedly declared that a certificate of convenience and necessity, issued by the Public Utilities Commission to a motor transportation company, is not a franchise, and that the holder of such certificate does not thereby acquire a property right in the route

covered by such certificate; that the issuing of such certificate is authorized only for the purpose of promoting the public convenience and necessity, and not for the purpose of conferring upon the holder of such certificate any proprietary interest or franchise in the public highways; that the purpose in limiting the number of certificates that may be granted over the same route is to promote the public convenience and necessity by restricting the number of busses to the needs of the public, and thus occasion as little inconvenience as possible to the public using the highways in the usual and ordinary way, and to insure to the holder of the certificate such immunity from competition as will enable him to serve the public convenience and necessity by regular and continuous public service; that a certificate of convenience and necessity is in the nature of a revocable personal permit, and has not the attributes of a property right."

43 C. J. 681, Section 110, says that:

"A certificate of public convenience and necessity granted to the owner or operator of public service motor vehicles is personal in character and is not, in the absence of statutory permission, transferable, and does not pass by assignment, succession, descent, or by any other process, from the recipient to anyone else." See Red Ball Transit Company v. Public Utilities Commission of Ohio, 112 Ohio St. 462, 147 N. E. 762; Estabrook v. Public Utilities Commission, 112 Ohio St. 417, 147 N. E. 761.

Approaching more closely the question presented in the instant case the California Railroad Commission in Re Western Motor Transport Company, P. U. R. 1922C, 12, held that motor vehicle operative rights under certificates separately granted could not legally be combined for the establishment of a through service, without first obtaining from the Commission a certificate of public convenience and necessity authorizing the through service. In the course of the opinion filed it was said:

"There remained, and still remains, vested in the

458

Railroad Commission, the power of granting or withholding a certificate declaring that public convenience and necessity require the proposed operation of such transportation company. As pointed out by the court in the above quoted decision, this is an exercise of the power of the state to determine whether the rights and interests of the general public will be advanced by the prosecution of the enterprise which it is proposed to carry on for the service of the public. Many considerations enter into a determination of whether or not such certificate should be granted. Important among these is the extent to which the communities proposed to be served are already provided with means of transportation by other public utilities. Under regulation, the power to protect from unnecessary competition, a public utility which is doing its full duty to the public is correlative to the power to require reasonable rates and adequate service.

"In granting a certificate, the Railroad Commission must find and declare that public convenience and necessity require the operation by the applicant of an auto stage between fixed termini or over a regular route. The finding by the Commission that such public convenience and necessity require operations between the various termini of the component parts of a through route, is not the same thing as finding that public convenience and necessity require the operation between the ultimate termini of the through route itself."

To the same effect are the cases of Blair v. Coast Truck Lines, Inc., P. U. R. 1922D, 588, and Re California Transit Co., P. U. R. 1923A, 225.

A similar conclusion was reached by the Florida Railroad Commission in Re St. Johns River Line Company, 7 P. U. R. (N. S.) 268, under regulatory legislation analogous to our law, and there that body said:

"It has been argued before the Commission that the approval of a transfer of a certificate from one transportation company to another would give the assignee of such certificate the authority, as a matter of right, to link up their operative rights under said certificates and thus form a through service. This argument proceeds upon an erroneous assumption and the result

reached by it is not sound. It may be true that a franchise held by a street railroad to use and occupy a street would authorize that street railroad to link up and extend its line by combining different franchises to occupy different streets within a city. A certificate of public convenience and necessity, however, is distinctly different from the grant of a franchise to use and occupy streets. The franchise to use and occupy streets is a grant of a limited property right for the use of public streets, while a certificate of public convenience and necessity is strictly a regulatory measure, and the granting or withholding of a certificate is an exercise of the power of the state to determine whether the rights and interests of the general public will be advanced by the prosecution of the enterprise which it is proposed to carry on for the service of the public. See People ex rel. New York Edison Co. v. Willcox (1912) 207 N. Y. 86, 100 N. E. 705, 45 L. R. A. (N. S.) 629.

"Therefore it is clear that operative rights under certificates separately granted cannot be lawfully combined for the establishment of a through service without first obtaining approval of the Railroad Commission and public convenience and necessity must be shown at that time for the linking up of such local operations."

The Supreme Court of Ohio in Pennsylvania R. Co. v. Public Utilities Commission, supra, has declared relative to the point in which we are here interested, that:

"An application to convert a local service, operated under two separate certificates, into a through service is in effect an application for a certificate of convenience and necessity to operate a new route, it being in effect an application to change one of the termini of each of the existing certificates and to convert two separate routes into one. Such an application must be made under section 614-91, General Code, as an application for a new route; and such publication and notice 'to all motor transportation companies, street railroads, interurban railroads and steam railroads operating in the territory through which the applicant proposes to operate' must be given as provided in that section; and before an order can issue granting such through serv-

ice, the Public Utilities Commission must find that the public convenience and necessity require such service."

Additionally, in Central Truck Lines, Inc. v. Railroad Commission, 118 Fla. 555, 160 So. 26, the Supreme Court of Florida confirmed the view theretofore expressed by the Commission, as indicated above, and said:

"Under our statute (chapter 14764, supra) motor vehicle operative rights under certificates separately granted cannot be lawfully combined for the establishment of a through service without first obtaining from the Railroad Commission a certificate of public convenience and necessity. This rule is more than a rule of commission policy to be followed by the commission or not as it sees fit in its administration of the act. It is inherent in the statute itself, because the act plainly contemplates that no prejudicial alteration shall be made in the established operative relationships of existing certificated motor carriers one with another, whether sought under the same ownership or under separate ownerships, unless the change be duly justified upon an application for a certificate of public convenience and necessity applied for and granted in the statutory mode. See Coast Truck Lines v. Railroad Commission of California, 191 Cal. 257, 215 P. 898.

"The purpose of issuing certificates of public convenience and necessity is not for the advantage and benefit of the applicants requesting them, but is primarily for the public convenience and general welfare which are paramount to other problems. It is not the policy of such legislation as Chapter 14764, supra, to encourage destructive competition with existing transportation facilities and thereby decrease or destroy such existing services and deprive the general public thereof. The policy of the law is to avoid duplication of investments and maintenance and operating expenses and avoid inordinate commercial traffic on the highways that will tend to congestion and danger to traffic in general. Where a new carrier seeks to enter despite the fact that another is in the field, it is therefore generally held to be necessary for it to show that the existing service is not adequate to serve the public need. West Suburban Transp. Co. v. Chicago & W. T. Ry. Co., 309 Ill. 87,

140 N. E. 56; Pond on Public Utilities (4th Ed.) articles 775 to 781, inclusive."

In our judgment the reasoning and conclusions of these authorities are persuasive and logically applicable here when the several statutory provisions of Chapter 65, supra, are analyzed. If the contentions of respondents above recited were to prevail, then it is easy to see that an individual or corporation could, by purchasing a number of certificates, each authorizing only local service, forthwith as a matter of right, insist that he be permitted to combine them and operate a through service, notwithstanding traffic conditions might be such that if at the time these certificates were granted a thorough service certificate had been asked for, it would have been refused and properly so. The consequence of upholding contentions of this nature would be that the Public Service Commission of Wyoming would be rendered helpless to guard the interests of the public as contemplated by Chapter 65, Laws of Wyoming, 1935. The necessity for motor transportation service within the meaning of that chapter refers to a definite need of the general public for transportation service where no reasonably adequate service exists; not the need of motor carriers for business. A. & T. Motor Freight v. Public Utilities Commission of Ohio, 125 Oh. St. 617, 184 N. E. 11; Chicago R. I. & P. Ry. v. State, 126 Okla. 48, 258 Pac. 874.

It is quite plain to us that granting a certificate of public convenience and necessity for local service from Cheyenne to Wheatland, for example, one for local service between Wheatland and Guernsey and one for local service between Guernsey and Casper, would differently affect the public generally, as well as other transportation agencies in the same territory, and require the consideration of different matters than would be involved in granting a certificate for through service between Cheyenne and Casper. Respondents appear to

claim, as we have seen, an absolute right to a transfer of the individual certificates they hold to the corporation above named despite their application for leave to transfer the same whereby they invoke the discretionary action of the Commission. The statute (Section 62, supra) will not permit such a claim. See also Gilmer v. Public Utilities Commission of Utah, 67 Utah 222, 247 Pac. 284.

As already noted, the law above quoted (Section 63) forbids a change of route fixed by a certificate, except by order of the Commission after a hearing held, concerning which all interested parties are required to receive notice. We think it clear that Calhoun-Goodrich Lines, Inc., if it were granted the right to take the suggested transfer of these certificates, would have routes and privileges thereunder that neither Goodrich nor Calhoun individually possessed.

A careful review of the record in the light of the pertinent statutory provisions above quoted, together with the decisions of boards and courts of undoubted authority under laws of like character with Chapter 65, supra, leads us to the conclusion that the Public Service Commission was in error in not requiring for the support of the order made adequate proof of public convenience and necessity for the transfer and consolidation of said certificates and the service they authorized, and in consequence said order is wholly unsupported by substantial evidence.

It will be recalled in this connection that respondents, on whom the burden rested to make a showing of this character, expressly refused to do so. Nevertheless, appellant undertook to make an affirmative presentation of his evidence on the question, notwithstanding the repeated objections of the respondents. A disposition of the matter, fair to the public interests and parties alike, requires, we think, that all those interested should present such evidence on the controlling

question of public convenience and necessity as they may hereafter care to submit at a new hearing held for that purpose.

The order of the district court of Laramie County confirming the order of the Public Service Commission of Wyoming is accordingly reversed, with instructions to remand the matter to the Public Service Commission for further proceedings, not in conflict with the views hereinabove expressed.

*Reversed with instructions.*

BLUME, Ch. J., and KIMBALL, J., concur.