The STATE of Missouri ex rel. PHILIPP TRANSIT LINES, INC., et al., Appellants,

v.

The PUBLIC SERVICE COMMISSION of the State of Missouri, Respondent.

No. KCD 27051.

Missouri Court of Appeals, Kansas City District.

May 5, 1975.

Tom B. Kretsinger, Warren H. Sapp, Kretsinger & Sapp, Kansas City, for appellants.

Michael F. Pfaff, Commission Counsel, Thomas A. Hughes, Asst. Commission Counsel, Jefferson City, for respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

TURNAGE, Judge.

Philipp Transit Lines, Inc., (Transit) and Philipp Transfer Lines, Inc., (Transfer), appeal from a judgment of the circuit court affirming an order made by the Missouri Public Service Commission (Commission). The question presented is whether or not Transit and Transfer are authorized to establish through routes and joint rates for the transportation of property under Section 390.116 RSMo 1969, V.A.M.S. (all statutory references are to RSMo 1969, V.A.M.S.) without specific approval of such through routes by the Commission. This court finds Transit and Transfer were authorized and reverses the judgment of the circuit court.

Transfer and Transit filed joint rates with the Commission for the transportation of property between Kansas City and St. Louis with an interchange at Marthasville, Missouri. Transit holds authority from the Public Service Commission through a certificate of convenience for the transportation of property between Kansas City and Washington, Missouri, and Transfer holds authority through a certificate of convenience issued by the Commission for the transportation of property between Treloar and St. Louis. A common point on the established routes of Transit and Transfer

is Marthasville. The rates filed called for the transfer of property being transported at Marthasville with Transit or Transfer relinquishing control at that point and transferring control to the other carrier.

After the filing of these rates by Transit and Transfer, five carriers holding a single line regular route authority from the Commission to transport property between St. Louis and Kansas City filed a petition with the Commission asking the Commission to suspend the rate schedule filed by Transit and Transfer. The petition further requested the Commission to investigate the alleged violation by Transit and Transfer of Rule 35 of the Commission's general order No. 33–E.

A hearing was held before an examiner of the Commission at which the only evidence adduced bore on the alleged violations of Rule 35. At this hearing Paul Philipp, the president of Transit, admitted a number of violations of the requirement that transfer of property being transported be carried out between Transit and Transfer at Marthasville, Missouri. According to Mr. Philipp, the transfer of the property between Transit and Transfer was accomplished by a strictly paper transaction in Washington, Missouri, without any actual physical transfer being accomplished at Marthasville as required by Commission rules and regulations.

The Commission made its report and order in which the rates filed by Transit and Transfer were suspended; Transit and Transfer were ordered to cease and desist in providing through service until such time as they were specifically authorized by the Commission to do so; and the authority held by Transit and Transfer to operate as common carriers was suspended for a period of fifteen days because of violations found by the Commission of its rules and regulations.

After motion for re-hearing and for oral argument, the Commission heard argu-ments and thereafter amended its report and order. As finally adopted by the Commission, the report and order ordered the suspension of the rates filed, ordered Transfer and Transit to cease and desist from providing through service at joint rates until such service was specifically authorized by the Commission, and ordered the general counsel of the Commission to institute suit in a court of competent jurisdiction against Transit and Transfer and/or Paul Philipp, to seek penalties and/or sanctions for violation of the rules and regulations of the Commission. On appeal to the circuit court the order finally made was affirmed.

Transit and Transfer contend § 390.116 authorized them to establish through routes and joint rates without specific approval from the Commission. The Commission contends its Rule 35 prohibits through routes and the joint rates without specific Commission approval.

§ 390.116 provides:

"1. Common carriers of property may establish reasonable through routes and joint rates, charges and classifications with other such carriers or with common carriers by railroad or express; and common carriers of passengers may establish reasonable through routes and joint rates, fares or charges with other such carriers or with common carriers by railroad. In case of such joint rates, fares, charges or classifications, it shall be the duty of the carriers, parties thereto, to establish just and reasonable regulations and practices in connection therewith, and just, reasonable and equitable divisions thereof as between the carriers participating therein which shall not unduly prefer or prejudice any of such participating carriers. "2. The commission may, whenever deemed by it to be necessary or desirable in the public interest, after hearing, upon complaint or upon its own motion, order the establishment of just and reasonable through routes and joint rates, fares,

charges, regulations or practices, applicable to transportation of passengers or property by common carriers."

Rule 35 provides:

"Every common carrier to the extent it is authorized by this Commission to engage in the transportation of property between points in Missouri over regular routes, is hereby authorized to establish joint service at joint through rates between any point in Missouri on its route and any point in Missouri on the regular route of another common carrier; provided, there is no authorized single line common carrier regular route service between such points."

It is readily apparent that Rule 35 follows the statute except for the last clause which provides that such through routes and joint rates may only be established when there is no authorized single line common carrier regular route between the points being serviced.

Rule 35 was originally adopted by the Commission to be effective on July 20, 1943. § 390.116 was passed by the General Assembly in 1951. Since the passage of this statute, Rule 35 has been readopted and promulgated by the Commission three times.

■ It is axiomatic that rules of the Commission must be consistent with and subject to statutes adopted by the General Assembly. This court stated in State ex rel. Springfield Warehouse & Transfer Company v. Public Service Commission, 240 Mo.App. 1147, 225 S.W.2d 792, 794[2] (1949):

"It has no power to adopt a rule, or follow a practice, which results in nullifying the expressed will of the Legislature. It cannot, under the theory of 'construction' of a statute, proceed in a manner contrary to the plain terms of the statute; and the fact that such a rule has been in existence for a long period of time does not give it legal effect or make its legality persuasive on the court, except in cases where the statute may fairly be said to be ambiguous."

■ In this case § 390.116 is not ambiguous and the Commission does not contend otherwise. The Commission contends that Rule 35 is merely the Commission's interpretation or definition of § 390.116(1) in that such rule merely provides that joint through routes are not deemed reasonable by the Commission where single line common carrier service between such points is already authorized. It is obvious the statute gives the Commission no power to determine whether or not the through routes established by the carriers are reasonable. The power to establish through routes is vested in the carriers. The power of the Commission in this regard is limited to the situation when the carriers fail to do so.

■ This Section is abundantly clear and needs no construction to give carriers the right to establish through routes. The through routes being established by the carriers are only on routes which had theretofore been approved by the Commission for use by the carriers. Thus, in the establishment of through routes, the carriers are doing nothing more than using routes already granted to them by the Commission and are simply interchanging property at some point on their routes which is common to both carriers.

This Section also grants to the carriers the right to establish joint rates, however, § 390.121 grants to the Commission the power to investigate any joint *rate* adopted under the provisions of § 390.116 and if the Commission finds that any such *rate* is or will be unjust or unreasonable, unjustly discriminatory, unduly preferential or unduly prejudicial, it shall so determine and prescribe the lawful rate which may be charged.

■ It is readily apparent the Legislature has not granted to the Commission any

power to limit or restrict the routes which may be involved in through routes which carriers establish under § 390.116. The power of the Commission is limited solely to the matter of joint rates which the carriers establish over such through routes.

The Commission further urges that under its general powers as enumerated in § 390.-041, it has the power to issue Rule 35. However, as pointed out above, the Commission has already exercised its power by issuing certificates of convenience and necessity to common carriers and approving their routes prior to the time two or more carriers exercise their power under § 390.-116 to establish through routes. There is certainly no conflict between § 390.116 and § 390.041. The former Section merely grants certain authority to common carriers to establish through routes and joint rates, but certainly such carriers remain subject to the control of the Commission in the general powers granted to the Commission.

■ It is manifest, therefore, that Rule 35 is contrary to § 390.116. That being so, the rule is hereby found to be void and the Commission may not enforce it. State ex rel. Springfield Warehouse & Transfer Company v. Public Service Commission, supra.

At the hearing before the examiner, Paul Philipp stated his wife, Eva Philipp, was the sole stockholder of Transfer, although she had supplied the money with which to purchase a company which held certificates issued by the Commission over the routes acquired by Transfer. Mr. Philipp further stated it was his desire to establish a single line service between Kansas City and St. Louis, however, he admitted that even though he was the actual controlling figure in both Transfer and Transit, he could not operate a single line service between those points but could do so only by an interline transfer at Marthasville. The Commission argues that this shows an intent on the part of Philipp to circumvent the rules and regu-

lations of the Commission to establish a single line service between Kansas City and St. Louis by using the fiction of a through route authorized by § 390.116.

■ There is no restriction placed by the Legislature or by the Commission on the number of common carriers which may be owned or controlled by the same people or by the same corporation. Absent such limitation, there is no restriction in § 390.116 to a through route being established by Transit and Transfer so long as they observe the rules and regulations concerning a transfer of property at Marthasville. Philipp concedes the necessity of the transfer between the two lines. In this he is correct.

■ The Commission further urges that Transit and Transfer have in fact consolidated their operating rights and under § 390.111(2) it is necessary for them to obtain approval for this. There was no evidence that Transit and Transfer have consolidated their certificates as a result of a transfer of operating rights as required by this Section. The only evidence before the Commission was that Transit and Transfer were entirely separate corporations, holding distinct and separate certificates from the Commission which authorized service on distinct and different routes. The evidence did not show any consolidation within the meaning of § 390.111(2).

The Commission did find pursuant to a certificate filed by Paul Philipp subsequent to the hearing before the examiner that Transfer had become a wholly owned subsidiary of Transit. However, there was nothing to indicate the two corporations had merged or that any consolidation, as discussed above, had taken place.

■ The Commission concentrated its efforts on the violations which Philipp admitted had been committed by Transit and Transfer in failing to make the required interline transfers of property at Marthasville, or commonly described as

"jumping the gateway", and failed to give any attention to the joint rates filed by the two companies. The Commission is authorized under Section 390.156 to direct its general counsel to begin an action to recover penalties or forfeitures or to enforce the powers of the Commission. In making its order directing the general counsel to commence such actions, the Commission was acting well within its powers. However, in ordering Transit and Transfer to cease and desist from establishing a through service at joint rates between points on their respective lines until specifically authorized by the Commission, the Commission was exceeding its jurisdiction. Likewise, the Commission exceeded its jurisdiction in ordering the rates filed by the two companies to be suspended. Under § 390.121, the Commission was limited to a determination of whether or not the rates as filed were unreasonable, unjust, discriminatory, unduly preferential or unduly prejudicial.

Two collateral motions have been taken with this case. One was filed by the Commission to dismiss the appeal for failure of Transit and Transfer to file the transcript within proper time. The other was filed by the five intervenors who have made no appearance in this court except for the filing of the motion to dismiss the appeal. Their motion seeks dismissal on the same ground as the Commission and in addition, alleges the cost bond required of the appellants was not timely filed.

This case illustrates once again the time and trouble which is incurred when the rules relating to appeals are not followed. In this case the appellant received an extension of time to file the transcript from the trial court without complying with the provisions of Rule 82.19, V.A.M.R. This caused the transcript to be filed in this court out of time. Further, the appellant's original brief filed in this court was found to be in violation of the rules governing the contents of briefs, and for that reason, both appellants and the Commission have been required to file two briefs in this court. It should be more than apparent to all concerned that the time required to consult the rules and to comply therewith would have been negligible compared with the time which has been required to be expended because of the failure to observe such rules.

This court and all the other appellate courts in this State have issued frequent warnings concerning the necessity of observing the rules in the handling of appeals. Such warnings have become more frequent and more urgent as the backlog of appeals increased. All of the appellate courts are motivated by the desire to handle their dockets as quickly as possible, however, this desire becomes frustrated when counsel fail to observe the very simple and plain requirements of the rules.

In the case at bar, this court has elected to dispose of this appeal on the merits and in so doing, has exercised its discretionary authority to grant the request of the appellants for the transcript to be filed out of time. Swager v. Monkem Company, Inc., 460 S.W.2d 291 (Mo.App.1970). However, what is being said concerning the necessity of following the rules is meant to once again call upon the bar to do all in its power to expedite the handling of appeals by following the rules governing appeals.

Without passing on the standing of the intervenors in this court to move for a dismissal of this appeal, their motion is overruled. The filing of a cost bond out of time is not fatal to the appeal and no harm or hardship has been shown to result. State ex rel. Transport Delivery Company v. Public Service Commission of Missouri, 414 S.W.2d 322 (Mo.App.1967). The motion of the Commission is likewise overruled.

The judgment of the circuit court is reversed and the cause is remanded to the circuit court with directions that this cause be remanded to the Public Service Commis-

sion with directions to the Commission to strike, cancel and delete from its final report and order those items designated as Ordered: (1) in which Transit and Transfer were ordered to cancel their joint rates, and Ordered: (2) in which Transit and Transfer were ordered to cease and desist from providing through service at joint rates between points on their respective lines until such through service at joint rates is specifically authorized by the Commission. As to Ordered: (3) of the report and order, the judgment of the circuit court is affirmed.

Nothing herein should be construed to limit or impinge the power of the Commission to investigate the joint rates filed by Transit and Transfer and to initiate such action under § 390.121 as it deems proper.

All concur.