4

Duff Truck Line, Inc., Appellant, *v.* Public Utilities Commission of Ohio, Appellee.

[Cite as Duff Truck Line v. Pub. Util. Comm. (1977), 51 Ohio St. 2d 4.]

(No. 76-1302—Decided July 6, 1977.)

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Robert W. Minor* and *Mr. Charles S. DeRousie,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Charles S. Rawlings* and *Mr. Samuel C. Randazzo,* for appellee.

*Per Curiam.* The issue before this court is whether the commission abused its discretion in ordering that the intrastate certificate of a motor carrier be suspended for a period of three days.

This issue can be resolved by this court's decision in

*Commercial Motor Freight* v. *Pub. Util. Comm.*, *supra* (46 Ohio St. 2d 195). In that case the court affirmed a decision of the commission finding the "tacking" of certificate authorities to be unlawful, but reversed the imposition of a 30-day suspension of Commercial's irregular route certificates. The court held the imposition of a 30-day suspension order was unreasonable.

Analyzing the present order in light of the standards established by *Commercial, supra,* we find the board's choice of sanctions unreasonable. As with the motor carrier in *Commercial,* Duff has engaged in tacking. It has also engaged in practices of cross-hauling and interlining. For simplicity, "cross-hauling" can be defined as the utilization of the same certificate twice; "interlining" of traffic between two carriers as the joinder or combination of certificates separately held by two carriers to accomplish a through movement; and "tacking" as the same joinder of certificates as set forth in interlining, but where the two certificates in question are held by the same carrier. Basically, all three practices involve different manners of utilization of certificates of public convenience and necessity. In both the *Commercial* case and the case at bar, the parties stipulated or conceded that the commission had not promulgated rules defining, authorizing or prohibiting cross-hauling, tacking or interlining.

Under circumstances similar to this cause, the court in *Commercial* concluded as follows:

"* * * [Al]though the court affirms the commission's finding of a violation, the majority of the court cannot agree that the suspension of appellant's irregular route authorization was reasonable as a penalty for that violation. Appellant has presented a colorable legal argument that tacking is permissible, an argument which the court agrees has been urged with more vigor than persuasion. * * *

"Were there a definite commission rule, order, or decision either forbidding tacking of different certificates by a single operator or requiring prior approval by the commission for such practice, there would be no question that the

penalty was reasonable. Here, the penalty of a major suspension of this operator's permit was imposed because the operator engaged in a questionable practice which other operators also engage in, as shown by the *Duff* case, and which the commission had under advisement at the time. Under these circumstances the penalty of a 30-day suspension is unreasonable.''

Having found the principles enunciated in *Commercial* dispositive of this appeal, this court modifies this order solely to remove the three-day suspension of Duff's operating privileges. The order is affirmed in all other respects.

*Order affirmed as modified.*

O'NEILL, C. J., HERBERT, W. BROWN, P. BROWN and SWEENEY, JJ., concur.

CELEBREZZE and LOCHER, JJ., concur in part and dissent in part.

LOCHER, J., concurring in part and dissenting in part.
The determination of the administrative action invoked against a carrier is for the Public Utilities Commission (commission) and that determination should not be modified by the court unless it is unreasonable or unlawful. *Ohio Transport* v. *Pub. Util. Comm.* (1955), 164 Ohio St. 98. The three-day suspension of Duff's operating privileges was neither unreasonable nor unlawful.

Duff was required to apply for the operating privilege which is the subject of this cause. Furthermore, Duff was required to demonstrate to the commission that the public convenience and necessity would be served by granting to Duff this valuable right of providing transportation. Having applied for and proven the need for this operating privilege, Duff's argument—that it should not be charged with the knowledge of the scope of these operating privileges—is ostensibly inconsistent with the procurement by Duff of this operating authority.

The promulgation of a rule stipulating that practices

not expressly permitted by the operating authority are illegal would be an unnecessary redundancy, because the operating privileges granted Duff are limited by their very nature.

The commission is charged by the General Assembly with the responsibility of protecting the public interest in its supervision of the operations of these transportation companies. Duff, being granted a valuable right, should be held to a higher duty to the public. However, Duff, through the utilization of a combination of its operating privileges, attempted to circumvent the commission and its determination of the effect of these unauthorized practices upon the public well-being. Thus, the avoidance of the penalty, assessed for activities which Duff admits occurred, should not rest merely upon the specious claim of ignorance of the law.

Additionally, the finding of gross negligence, the range of the violations and the light penalty accentuate the disparity between the instant cause and *Commercial Motor Freight* v. *Pub. Util. Comm* (1976), 46 Ohio St. 2d 195.

The application of the rule espoused in *Commercial Motor Freight, supra,* to the present cause is not dictated by precedent, justice nor a concern for the public welfare. Therefore, I am unable to agree with the majority's eradication of the three-day suspension of Duff's operating privileges imposed by the commission.

CELEBREZZE, J., concurs in the foregoing concurring and dissenting opinion.