MAIN LINE HAULING CO.,
INC., Respondent,

v.

PUBLIC SERVICE COMMISSION of the
State of Missouri, Appellant,

Orscheln Bros. Truck Lines, Inc., a corporation, Middlewest Freightways, Inc., a corporation, Anderson Motor Service, Inc., a corporation, and Churchill Truck Lines, Inc., a corporation, Intervenors-Appellants.

Nos. KCD29486, KCD29501.

Missouri Court of Appeals,
Kansas City District.

Aug. 28, 1978.

Motion for Rehearing and/or Transfer
Denied Oct. 10, 1978.

Application to Transfer Denied
Nov. 6, 1978.

Thomas A. Hughes, Arthur L. Conover, Jefferson City, for appellant.

Jeremiah D. Finnegan, Russell D. Jacobson, Kansas City, for respondent.

John E. Burruss, Jr., Jefferson City, for intervenors-appellants.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Main Line Hauling Co., Inc., petitioned the Circuit Court for a judgment declaring its right to "tack" three separate approved routes so that Main Line could provide

through service from the furthest extremity of each route to the furthest extremity of each of the other routes. The Circuit Court granted declaratory relief of the nature prayed and enjoined the Commission against seeking sanctions against Main Line for instituting the proposed service. The Public Service Commission and four intervening competitor truck lines appeal. We reverse.

Main Line holds a certificate of public convenience and necessity giving it a route to transport commodities between St. Louis, Missouri, and Hy-Point Industrial and Research Park near Rolla, Missouri, another route between Kansas City, Missouri, and the Park, and still a third route between Springfield, Missouri, and the Park. Main Line claims that it is entitled to tack or join one of these authorities to another so that for example it may haul commodities directly from St. Louis to Kansas City via Rolla. It concedes that the Commission could have limited the certificate by express provision so as to specifically prohibit such tacking, but Main Line contends that in the absence of such an express limitation it does have the right to tack unless and until the Commission undertakes to impose a prohibition after due notice and hearing.

The intervenors hold authorities for regular through service between Kansas City and St. Louis. They and the Commission oppose Main Line's interpretation of its right to tack. Intervenors and the Commission say that under the statutes, a carrier can do only that which is specifically spelled out in its certificate, and absent a specific grant of authority to provide through service such authority does not exist. This constitutes their Point on Appeal as relates to the merits of the controversy in this case. They also present a preliminary point that the trial court erred in exercising jurisdiction in this matter at this time, because the doctrine of primary jurisdiction requires that the issue on the merits be presented to the Public Service Commission in the first instance.

## I.

### *The Doctrine of Primary Jurisdiction*

This doctrine is based on a judicial policy of self-restraint and calls upon a court to defer to and give an administrative agency the first right to consider and act upon a matter which calls for factual analysis or the employment of special expertise within the scope of the agency's responsibility entrusted to it by the legislature. 2 Am.Jur.2d, Administrative Law, Sec. 788, p. 688 et seq.; 73 C.J.S. Public Administrative Bodies and Procedure § 40, p. 347; *State ex rel. Cirese v. Ridge*, 345 Mo. 1096, 138 S.W.2d 1012 (banc 1940). However, where there are no factual questions or issues requiring administrative expertise, but instead only questions of law which fall within the conventional competency of the courts, there is no reason for judicial deference to the administrative agency and the doctrine of primary jurisdiction has no application. 2 Am.Jur.2d, Administrative Law, Sec. 793, p. 696; 73 C.J.S. Public Administrative Bodies and Procedure, § 41, p. 351; *Smith v. Thompson*, 234 Mo.App. 1151, 137 S.W.2d 981 (1940). See also *Klicker v. Northwest Airlines, Inc.*, 563 F.2d 1310 (9th Cir. 1977).

In the instant case, the substantive issue presently for consideration can be resolved as a pure question of law, as will be seen from Section II of this opinion. Therefore, the doctrine of primary jurisdiction did not preclude exercise of jurisdiction by the Circuit Court.

## II.

### *The Right to Tack*

Section 390.051–1 (all statutory references are to RSMo 1969) provides that " * * * no person shall engage in the business of a common carrier in intrastate commerce on any public highway in this state unless there is in force with respect to such carrier a certificate issued by the commission authorizing such operations." Section 390.051–7 provides that it shall be unlawful for any common carrier, except one having a certificate authorizing such ser-

vice, to accept property for transportation between points on an authorized regular route. The Missouri Public Service Commission has construed those sections to mean that a carrier in this state holding authority for two separate routes running to a common point may not tack those authorities where no authority for such tacking has been specifically granted by the Commission's certificate. *Re Healzer*, 5 Mo. P.S.C. (N.S.) 129 (1954). See also *Anderson Motor Service Co., et al. v. Orscheln Bros.*, 21 Mo.P.S.C. 368 (1934), affirmed *State ex rel. Orscheln Bros. Truck Lines, Inc. v. Public Service Commission*, 232 Mo.App. 605, 110 S.W.2d 364 (1937).[1]

The administrative agencies and courts of many states have reached the same result under comparable statutes. Most of these jurisdictions hold tacking may not be permitted except upon a hearing and a particularized finding in each individual case of public convenience and necessity for the joinder. As stated in *McKenna v. Nigro*, 150 Colo. 335, 372 P.2d 744, 747 (1962), "state courts have consistently held that before two or more separate authorities may be integrated into one authority providing an entirely new service, there must be a showing that public convenience and necessity demand the new integrated service." In support: *Enid Transfer & Storage Co. v. State*, 201 Okl. 274, 190 P.2d 150 (1947); *Application of Calhoun*, 51 Wyo. 448, 68 P.2d 591 (1937); *Pennsylvania R. Co. v. Public Utilities Comm.*, 116 Ohio 80, 155 N.E. 694 (1927); *Eastridge v. Southeastern Greyhound Lines*, 280 Ky. 392, 133 S.W.2d 95 (1939); *Central Truck Lines v. Railroad Comm.*, 118 Fla. 555, 160 So. 26 (1935); *Central Truck Lines v. Railroad Comm.*, 158 Fla. 68, 27 So.2d 658 (1946). See also *Michi-*

*gan Exp., Inc. v. Michigan Public Service Comm.*, 333 Mich. 101, 52 N.W.2d 616 (1952); *Murphy Motor Freight Lines, Inc. v. Witte Transportation Co.*, 260 Minn. 440, 110 N.W.2d 296 (1961); *Santa Fe Trail Transportation Co. v. State*, 468 P.2d 791 (Okl.1970). A typical statement of the reason for this rule appears in *Pennsylvania R. Co. v. Public Utilities Comm., supra*, at l.c. 697:

> "An application to convert a local service, operated under two separate certificates, into a through service, is in effect, an application for a certificate of convenience and necessity to operate a new route, it being in effect an application to change one of the termini of each of the existing certificates and to convert two separate routes into one."

Some cases have countenanced a more liberal practice under which the administrative agency in its discretion may authorize tacking in a general category of cases on a blanket basis, without individual findings in each particular case; but these holdings likewise recognize that in the absence of the adoption of such a policy, there is no right to tack. *Duff Truck Line, Inc. v. Public Utilities Commission*, 46 Ohio 2d 186, 348 N.E.2d 127 (1976); *Commercial Motor Freight, Inc. v. Public Utilities Commission*, 46 Ohio 2d 195, 348 N.E.2d 132 (1976); *Duff Truck Line, Inc. v. Public Utilities Commission*, 51 Ohio 2d 4, 364 N.E.2d 856 (1977); *Nebraska State Railway Commission v. Seward Motor Freight Inc.*, 188 Neb. 223, 196 N.W.2d 200, 203 (1972), cert. den., 409 U.S. 1028, 93 S.Ct. 464, 34 L.Ed.2d 321. The governing rule is stated in *Seward* as follows: "Except in instances where the right to tack has been specifically granted by the Commission, the right does not exist. It is

---

1. The opinion of this court in *Orscheln* did not pass on the right of a carrier to tack per se, but rather placed the denial of the right of the carrier in that case to tack upon the ground that the carrier in its application to the Commission had made an affirmative representation that it was not seeking authority for through transportation and it expressly disclaimed the right to tack. The question suggests itself whether Main Line in the present case should be considered as having made an

implied representation of a willingness to accept the three routes granted subject to the existing policy expressed in *Healzer*, thereby bringing this case within the rationale of the *Orscheln Bros.* decision. Certainly it must have been the Commission's intention that Main Line's route authorizations be subject to the *Healzer* condition against tacking. However it is not necessary to a decision in this case to explore and rule upon these propositions.

not an implied right inherent in existing certificates."

If the view be adopted that the Missouri statute bars tacking except when the Commission has made a specific finding of public convenience and necessity therefor, then, of course, Main Line has no right to tack its three routes in question because the Commission has made no such finding. Even if the more liberal view be accepted that the Commission in its discretion may allow tacking on a blanket basis in one or more categories of cases, the Missouri Commission has never adopted any such policy. To the contrary, the Missouri Public Service Commission in *Healzer* adopted and has ever since consistently followed the policy of not permitting tacking, unless the certificate specifically so provides.

Main Line argues, however, that the Federal rule with respect to interstate commerce is different and that the Interstate Commerce Commission has adopted the policy of recognizing a right to tack in every case where the certificate does not expressly so prohibit. Main Line argues that the Federal policy is persuasive and should be followed in lieu of the present Missouri policy, which it says is contrary to the interests of carrier efficiency and energy conservation. This matter of policy is highly debatable. The Interstate Commerce Commission itself came to doubt the wisdom of its permission of automatic tacking and has made a restudy of that policy. *Thompson Van Lines, Inc. v. United States*, 399 F.Supp. 1131, l.c. 1133 (D.D.C.1975). In any event and even assuming that the Missouri Public Service Commission does have a right under the Missouri statute to adopt a general policy permitting blanket tacking, any change in the existing Missouri policy is a matter requiring factual analysis and much administrative expertise which clearly would come within the doctrine placing primary jurisdiction in the administrative agency rather than in the court. Certainly the court should not intrude into that determination at least until the agency acts first, and then only to the extent of determining whether the administrative findings are reasonable and supported by a proper record.

Main Line also argues that blanket tacking should be permitted because of the opinion of this court in *State ex rel. Philipp Transit Lines, Inc. v. Public Service Commission*, 523 S.W.2d 353 (Mo.App.1975). In *Philipp Transit* this court held that statutory Section 390.116 authorized inter-lining between two carriers going to a common point and that Rule 35 by the Commission purporting to provide to the contrary was invalid as in contravention of the statute. There is at least one important difference between the problem of inter-lining as compared to the problem of tacking. In the case of inter-lining, there are two separate carriers; whereas in the case of tacking, there are two or more routes owned by a single carrier. It should be noted that if routes originally issued to two different carriers are thereafter consolidated in the hands of one carrier, the right of inter-lining no longer exists, and the situation is then covered not by Section 390.116, but rather by Section 390.111–2. Thus the legislature itself has recognized a sharp difference between multiple ownership of routes as against single ownership of more than one route. It should also be noted that this court in *Philipp Transit* took special pains to point out that the routes there were separately owned, with the result that Sec. 390.111–2 did not apply.

Other differences between the problems of inter-lining and tacking may exist. That again raises factual questions and issues requiring administrative expertise, all of which calls for the application of the doctrine of primary jurisdiction in favor of initial consideration by the administrative agency. If the decision in *Philipp Transit* so alters the regulatory problems so as to render a change advisable with respect to tacking, that must be taken up with and passed upon by the Commission in the first instance.

█ Main Line has no present right to tack the three routes in question, and the trial court erred in ruling to the contrary. The judgment is therefore reversed.

All concur.